ARNOLD P. AND GRETE M. GRUNWALD, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1518–67. Filed October 22, 1968.

Arnold P. Grunwald, pro se.
*Lewis M. Porter, Jr.*, for the respondent.

DAWSON, *Judge:* Respondent determined a deficiency in petitioners' income tax for the year 1964 in the amount of $195.91.

The only issue for decision is whether tuition paid by petitioners in 1964 for the education of their blind son at the Morgan Park Academy is deductible as an expense for medical care under section 213.[1]

FINDINGS OF FACT

Some of the facts are stipulated and are found accordingly.

Arnold P. Grunwald and Grete M. Grunwald (herein called petitioners) are husband and wife, who were legal residents of Chicago, Ill., at the time they filed their petition in this proceeding. They filed their joint Federal income tax return for the year 1964 with the district director of internal revenue at Chicago, Ill.

On their income tax return they claimed as education, training, and equipment expense for their blind son, Peter, a deduction of $1,307.05. Of this amount respondent allowed $473.41 as representing expenditures for cane training, special training for the blind in music and swimming instruction, and repairs for special equipment, including a braille typewriter. The remaining amount of $833.64, which respondent

---

[1] All statutory references are to the Internal Revenue Code of 1954 unless otherwise stated.

disallowed as a deduction, represents tuition paid by them in sending Peter to the Morgan Park Academy, located at 2153 West 111th Street in Chicago.

Peter lost the sight in both of his eyes in early infancy due to a congenital malignancy.

Peter was placed in the first grade at the Perry School in Chicago where he attended grades one through four. The Perry School is a public elementary school for students in grades one through eight. In addition to its regular school program, the Perry School is one of several schools in the Chicago public school system which also maintains facilities for providing elementary education and training to handicapped children. Handicapped children attending the school receive their education and training in special classes segregated from the rest of the student body. While attending the Perry School, Peter was enrolled in a class specifically for blind children in which he received all of his schooling. While there, Peter learned to read and write braille, arithmetic, and other skills. He was very bright.

Petitioners were advised by the following individuals to place Peter in a school which would allow him to participate in a regular school program with children who could see: Miss Miriam Norris, who was then head of the Study of Exceptional Children program at the University of Chicago and is currently affiliated with the School of Social Service; Mr. Martin Baron, president of Parents of the Blind, Inc.; and a Mrs. Farley and Mrs. LaPres, who were Peter's teachers at the Perry School. Both Mrs. Farley and Mrs. LaPres were assigned as resource teachers, i.e., teachers with special training to serve blind children at the Perry School.

Arnold P. Grunwald, as vice president of Parents of the Blind, Inc., had tried unsuccessfully to persuade the Chicago public school system to implement an integrated program in which blind children would have the opportunity to participate with seeing children in a regular school program. The Chicago public school system refused to place Peter in a regular class with seeing students.

Petitioners then contacted several private schools, all of which were intrigued by the idea of educating Peter in a regular school program with seeing students, but, with the exception of one, decided that they were either not equipped or willing to carry out such an experiment. Of the several schools contacted by petitioners, Morgan Park Academy was the only one willing to undertake the experiment of educating Peter along with its regular student enrollment and to provide the necessary accommodations to effect such a program.

Peter entered Morgan Park Academy in the fifth grade on a trial basis in 1961 and finished first in his class during his first year there. Since the completion of his first year at Morgan Park, both the peti-

tioners and the school have considered the experiment successful. Peter has continued at Morgan Park and is now attending the 11th grade.

Peter completed the seventh grade in June 1964, the taxable year in question, and began the eighth grade in September of that year. The tuition expense covers instruction received in both grades during the year 1964 at which time Peter was 12 years old.

Peter was the first, and currently is the only, blind student enrolled at Morgan Park Academy.

Morgan Park Academy is a privately operated college-preparatory school for students in the pre-first-grade through 12th-grade levels. Most of its students go on to college. It is nonsectarian and provides a regular coeducational program for its students.

Morgan Park Academy maintains on its staff no medical doctors or teachers who specialize in teaching blind or other handicapped students. Morgan Park does not provide any medical services in the conventional sense for its students.

Petitioners' expense in sending Peter to Morgan Park Academy was not incurred at the direction or suggestion of a physician or medical doctor.

At Morgan Park, Peter is primarily receiving educational services in exchange for the tuition expense incurred by his parents. These educational services cover instruction, individual attention, counseling, and opportunities to receive recognition and to exploit gifts and interests.

Morgan Park had problems in its experiment with Peter on two levels: The first, involving Peter's parents, related to the preparation or acquisition of special text books and collateral reading materials which were necessary for Peter to use in order to move through Morgan Park's academic program; the second, involving the school, related to the preparation of special examinations for Peter and to see that he was given special assistance in the administration of certain tests and examinations. Other than that, as a result of Morgan Park's administrative decisions and with the complete concurrence of Peter's parents, no special added provisions were made for him. Morgan Park worked with Peter's parents in having them procure from either State or national agencies or agencies dealing with resources for the blind proper curriculum materials in braille.

Adjustments made by Morgan Park Academy to accommodate Peter included having its teachers find a means to communicate with him, such as spelling words aloud while writing them on the blackboard, providing Peter with a large-sized executive-type desk to accommodate the use of his braille writer and providing him with extra space for his braille books which are bulky, the selecting of classes where the

teacher in the class and the whole environment seem to be conducive to Peter's learning to participate with seeing children, obtaining tests given in braille, and obtaining the services of a resource person, someone who was skilled in braille and other educational tools for the blind for the purpose of translating in class or after class what Peter had written down in braille so that his teachers could read and correct his assignments.

When Peter first entered Morgan Park Academy the school obtained the services of Mrs. Marjorie Levy of the National Braille Association, who volunteered at no expense to the school to act as liaison and counsel between Peter and his teachers and as an expert on braille. Her duties included, among others, the interpreting and transcription of Peter's work for his teachers and the preparation of tests in braille. Mrs. Levy worked in this capacity for a period of approximately 2 years on a gradually decreasing basis until both Peter and his teachers could dispense completely with her services.

Peter is a student at Morgan Park on the same basis as every other student. His parents have accepted this and have never asked that exceptions be made in his case. Peter functions as any of the other members of Morgan Park's student body with the same weight and demands placed upon him as on the others.

As a result of the opportunity provided Peter to participate with normal seeing children at Morgan Park, he learned to type on a regular typewriter, he acquired the ability to compose a paper and write it down without being able to see it, and he learned to catch up on his own where text materials which could not be transcribed into braille were used in class.

The experience of participating in Morgan Park's regular academic program with normal seeing students of above average to superior intellectual abilities has resulted in Peter's having grown in confidence in his own intellectual capacities and ability to learn. Peter has acquired a capacity to function socially as well as academically, as evidenced by his conversational abilities and interest in other students. All of this has contributed to his having achieved an emotional sturdiness, a degree of social maturity and confidence to function in a sighted world which he might not have otherwise achieved.

The academic standards at Morgan Park Academy are appreciably higher than those of the Chicago public school system. The student-teacher ratio at Morgan Park is 13 to 1, about half that of the schools in the Chicago public school system. Morgan Park has a fully developed system of honors programs, including advanced-placement programs, in which students are able to receive college credits.

The principal reason for enrolling Peter in Morgan Park Academy was to place him in a more challenging educational environment so

that he might pursue the same goals as seeing students, namely, a college-preparatory education.

During the year 1964 Peter was on a partial scholarship at Morgan Park Academy. The regular tuition fee of Morgan Park in 1964 was approximately $1,100. Peter's scholarship was the difference between $1,100 and the $833.64 paid by petitioners. His scholarship was given on the basis of his academic performance and not as a grant for a handicapped person. The tuition expense at Morgan Park is comparable to that of other private schools in the Chicago area.

## OPINION

Section 213 of the Internal Revenue Code of 1954 allows a deduction for amounts paid for medical care.[2] The applicable regulations provide that for educational costs to be treated as a medical expense the individual must attend a "special school" with resources for alleviating the given mental or physical handicap and these resources must be the principal reason for the individual's presence there.[3]

---

[2] SEC. 213. MEDICAL, DENTAL, ETC., EXPENSES.

(a) ALLOWANCE OF DEDUCTION.—There shall be allowed as a deduction the following amounts of the expenses paid during the taxable year, not compensated for by insurance or otherwise, for medical care of the taxpayer, his spouse, or a dependent (as defined in section 152)—

  \*      \*      \*      \*      \*      \*      \*

(e) DEFINITIONS.—For purposes of this section—

  (1) The term "medical care" means amounts paid—

    (A) for the diagnosis, cure, mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure or function of the body (including amounts paid for accident or health insurance), or

[3] Sec. 1.213–1, Income Tax Regs.

(e) *Definitions*—(1) General. (1) The term "medical care" includes the diagnosis, cure, mitigation, treatment, or prevention of disease. Expenses paid for "medical care" shall include those paid for the purpose of affecting any structure or function of the body, for accident or health insurance, or for transportation *primarily for and essential to medical care.* \* \* \*

(ii) Amounts paid for operations or treatments affecting any portion of the body, including obstetrical expenses and expenses of therapy or X-ray treatments, are deemed to be for the purpose of affecting any structure or function of the body and are therefore paid for medical care. Amounts expended for illegal operations or treatments are not deductible. Deductions for expenditures for medical care allowable under section 213 will be confined strictly to expenses incurred primarily for the prevention or alleviation of a physical or mental defect or illness. Thus, payments for the following are payments for medical care : hospital services, nursing services (including nurses' board where paid by the taxpayer), medical, laboratory, surgical, dental and other diagnostic and healing services, X-rays, medicine and drugs (as defined in subparagraph (2) of this paragraph, subject to the 1-percent limitation in paragraph (b) of this section), artificial teeth or limbs, and ambulance hire. However, an expenditure which is merely beneficial to the general health of an individual, such as an expenditure for a vacation, is not an expenditure for medical care.

  \*      \*      \*      \*      \*      \*      \*

(v) The cost of in-patient hospital care (including the cost of meals and lodging therein) is an expenditure for medical care. The extent to which expenses for care in an institution other than a hospital shall constitute medical care is primarily a question of fact which depends upon the condition of the individual and the nature of the services he receives (rather than the nature of the institution). A private establishment which is regularly engaged in providing the types of care or services outlined in this subdivision shall be

Respondent's position is twofold: (1) Morgan Park Academy does not qualify as a "special school" as that term is used in the regulations and (2) the services received by Peter at Morgan Park do not qualify as "medical care" provided by an institution other than a hospital within the meaning of the broader provisions of subdivision (v) of the regulations.

Petitioners contend that the "special school" provisions are irrelevant in this case, but that they should prevail because they "sought the services of MPA principally for therapeutic (and other) reasons, that these services were carefully devised and rendered in the permanent focus on the goal of minimizing Peter's handicap and that the singular success of the program supports the proposition that it is therapeutic." Stated differently, petitioners assert that—

Tuition and associated expenses at MPA for Peter were incurred for primary reasons including alleviation of the handicap of blindness, with the specific aim to minimize limitations and deprivations directly associated with the inability to see and to establish and develop specific functions of body and mind not required by those who do see—and thus to restore to the largest extent possible the ability to live a normal, useful and satisfactory life.

While the petitioners' argument is novel, and indeed appealing from an equitable standpoint, we do not find it legally sound or convincing in these circumstances.

It is clear that Morgan Park Academy was not a "special school" as that term is used in the regulations. Clause (a) refers to an institution where education is only "incidental" to medical care. The specific example mentioned is "a school for the teaching of braille or lip reading." Morgan Park Academy is not such an institution. Cf. *C. Fink Fischer*, 50 T.C. 162 (1968); *H. Grant Atkinson, Jr.*, 44 T.C. 39 (1965). It is a college-preparatory school with the primary emphasis

considered an institution for purposes of the rules provided herein. In general, the following rules will be applied:

(a) Where an individual is in an institution because his condition is such that the availability of medical care (as defined in subdivisions (i) and (ii) of this subparagraph) in such institution is a principal reason for his presence there, and meals and lodging are furnished as a necessary incident to such care, the entire cost of medical care and meals and lodging at the institution, which are furnished while the individual requires continual medical care, shall constitute an expense for medical care. For example, medical care includes the entire cost of institutional care for a person who is mentally ill and unsafe when left alone. While ordinary education is not medical care, the cost of medical care includes the cost of attending a special school for a mentally or physically handicapped individual, if his condition is such that the resources of the institution for alleviating such mental or physical handicap are a principal reason for his presence there. In such a case, the cost of attending such a special school will include the cost of meals and lodging, if supplied, and the cost of ordinary education furnished which is incidental to the special services furnished by the school. Thus, the cost of medical care includes the cost of attending a special school designed to compensate for or overcome a physical handicap, in order to qualify the individual for future normal education or for normal living, such as a school for the teaching of braille or lip reading. Similarly, the cost of care and supervision, or of treatment and training, of a mentally retarded or physically handicapped individual at an institution is within the meaning of the term "medical care."

on education and not upon the mitigation or treatment of blindness. Cf. *Martin J. Lichterman*, 37 T.C. 586, 596 (1961).

The broader provisions of subdivision (v) permit us to analyze the problem on an individual basis, i.e., by looking at the condition of the person and at the nature of the particular services received by him rather than the nature of the institution. *C. Fink Fischer, supra* at 174–175. Incidental expenses of a personal nature are not deductible under this subdivision. Only those expenses that are for "medical care" are deductible. In situations where this Court has relied on the broader provisions of subdivision (v) in allowing a deduction of some amount, we have found that the purpose of sending a handicapped person to a particular school was dual; namely (1) medical services and (2) educational services, the Court having allowed a deduction for the former but not for the latter. See *Hobart J. Hendrick*, 35 T.C. 1223 (1961); *C. Fink Fischer, supra;* and *Estate of Reuben A. Baer,* T.C. Memo. 1967–34. Unlike the *Hendrick, Fischer,* and *Baer* cases, there is no basis for an allocation in this case. Peter's tuition cost was the same as that paid by the other students at Morgan Park Academy.

The evidence in this case plainly shows that the primary reason for enrolling Peter at Morgan Park was to enable him to pursue a college-preparatory education in a more challenging educational environment than that provided by the Chicago public schools. What Morgan Park rendered in return for tuition was educational services. There was no one on its staff who was qualified to administer "medical care" or to give special training and attention to a handicapped student—either the type of care normally performed by medical doctors, physicians, psychiatrists, and the like, or the training performed by persons who are trained to render special services designed to help compensate or overcome an individual's handicap. Peter received the same educational services in exchange for the tuition expense incurred by his parents as did all other students at Morgan Park Academy in exchange for the tuition paid on their behalf. Many of the services provided Peter at Morgan Park during 1964 were basically the same as those provided by the Chicago public schools in its segregated classes for handicapped children. The principal difference was environmental. Peter was educated along with seeing students at Morgan Park rather than in segregated classes for the blind.

Adjustments made by Morgan Park Academy to accommodate Peter were relatively minor and involved no extra cost to petitioners. When Peter first entered Morgan Park, the school obtained the services of a resource person from the National Braille Association to act as liaison and counsel between Peter and his teachers and as an expert on braille. However, these services were rendered on a volunteer basis at no ex-

pense to the school or to petitioners. Furthermore, these services were provided for a period of approximately 2 years on a decreasing basis until both Peter and his teachers could completely dispense with them, and they were terminated prior to 1964. Of the amount charged petitioners for Peter's tuition, no expenses were included that related to special services designed to alleviate Peter's handicap of blindness. In short, Peter was a student at Morgan Park Academy on the same basis as other students and with the same pursuits. His father testified that the purpose for enrolling Peter at Morgan Park was to place him in a more challenging educational environment.

In a case of this type it is incumbent on the taxpayer claiming a deduction for the cost of sending his handicapped child to a school not regularly engaged in providing medical services to establish that the services received are primarily medical in nature and not educational. It is not enough herein to show that "therapeutic benefits" were derived from the services Peter received at Morgan Park Academy. That fact alone is insufficient to make such services medical rather than educational. We must consider both the condition of the individual and the services he received, first independently and then together, to ascertain whether the design of the latter is such as to meet the requirements of the former. There must be a proximate relationship between the two in order to establish that the expense was incurred primarily for purposes of medical care. The required proximate relationship is not present here. No doubt the Morgan Park educational services paid by the petitioners were beneficial to Peter's general health and well-being and prepared him to live better in a seeing world. And no doubt the achievements accomplished are attributable in some degree to the educational atmosphere at Morgan Park, to the perseverance and ability of Peter, and to the assistance, encouragement, and selfless dedication of his parents. However, it is settled law that expenses beneficial to a person's general health and well-being, but permeated with personal considerations, do not constitute "medical care" as defined in section 213 (e) (1) and the regulations promulgated thereunder. See *Edward A. Havey*, 12 T.C. 409 (1949) ; *H. Grant Atkinson, supra*. In the instant case we think the educational services provided by Morgan Park Academy were not rendered as a part of the alleviation, mitigation, or treatment of Peter's handicap. They did not have a direct or proximate therapeutic effect on his blindness. The fact that therapeutic benefits may have resulted from Peter's exposure to a regular academic program with seeing students and teachers does not qualify ordinary educational services as "medical care." It is not for us to rewrite the statute in a new image by judicial edict. We must leave that to Congress.

Accordingly, we are constrained to hold that the deduction claimed for Peter's tuition expense is not allowable as a medical expense under section 213(a). The amount paid must be treated as a nondeductible personal expense under section 262.

*Decision will be entered for the respondent.*