PAUL H. RIPPLE AND CAROLYN W. RIPPLE, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2663–68.    Filed June 30, 1970.

*Richard M. Squire*, for the petitioners.
*Mary Ann Hagan*, for the respondent.

## OPINION

Section 213 of the Code allows a deduction for amounts paid for medical care for the treatment of a dependent suffering from a disease.[3]

David Ripple possessed the mental ability to read but had problems reading. His lack of reading proficiency was caused, at least to some extent, by his emotional difficulties. Expenditures made by the peti-

---

[3] SEC. 213. MEDICAL, DENTAL, ETC., EXPENSES.

(a) ALLOWANCE OF DEDUCTION.—There shall be allowed as a deduction the following amounts of the expenses paid during the taxable year, not compensated for by insurance or otherwise, for medical care of the taxpayer, his spouse, or a dependent (as defined in section 152)—

\*      \*      \*      \*      \*      \*      \*

(e) DEFINITIONS.—For purposes of this section—

(1) the term "medical care" means amounts paid—

(A) for the diagnosis, cure, mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure or function of the body (including amounts paid for accident or health insurance) \* \* \*

tioners to treat their son's emotional difficulties would fall within the definition of medical care. See *C. Fink Fischer*, 50 T.C. 164 (1968); *Hobart J. Hendrick*, 35 T.C. 1223 (1961).

The petitioners contend that the entire amount of the tuition paid Matthews School along with the amounts paid for room and board are deductible as expenses for medical care. They base their contention on the regulations relating to institutionalized care which provide that for educational costs and meals and lodging to be treated as medical expenses the individual must attend a "special school" with resources for alleviating a given mental or physical handicap, and these resources must be a principal reason for the individual's presence there.[4]

---

[4] Sec. 1.213–1, Income Tax Regs. :

(e). *Definitions*—(1) *General.* (i) [T]he term "medical care" includes the diagnosis, cure, mitigation, treatment, or prevention of disease. Expenses paid for "medical care" shall include those paid for the purpose of affecting any structure or function of the body, for accident or health insurance, or for transportation primarily for and essential to medical care. * * *

(ii) Amounts paid for operations or treatments affecting any portion of the body, including obstetrical expenses and expenses of therapy or X-ray treatments, are deemed to be for the purpose of affecting any structure or function of the body and are therefore paid for medical care. Amounts expended for illegal operations or treatments are not deductible. Deductions for expenditures for medical care allowable under section 213 will be confined strictly to expenses incurred primarily for the prevention or alleviation of a physical or mental defect or illness. Thus, payments for the following are payments for medical care : hospital services, nursing services (including nurses' board where paid by the taxpayer), medical, laboratory, surgical, dental and other diagnostic and healing services, X-rays, medicine and drugs (as defined in subparagraph (2) of this paragraph, subject to the 1-percent limitation in paragraph (b) of this section), artificial teeth or limbs, and ambulance hire. However, an expenditure which is merely beneficial to the general health of an individual, such as an expenditure for a vacation, is not an expenditure for medical care.

*       *       *       *       *       *       *

(v) The cost of in-patient hospital care (including the cost of meals and lodging therein) is an expenditure for medical care. The extent to which expenses for care in an institution other than a hospital shall constitute medical care is primarily a question of fact which depends upon the condition of the individual and the nature of the services he receives (rather than the nature of the institution). A private establishment which is regularly engaged in providing the types of care or services outlined in this subdivision shall be considered an institution for purposes of the rules provided herein. In general, the following rules will be applied :

(a) Where an individual is in an institution because his condition is such that the availability of medical care (as defined in subdivisions (i) and (ii) of this subparagraph) in such institution is a principal reason for his presence there, and meals and lodging are furnished as a necessary incident to such care, the entire cost of medical care and meals and lodging at the institution, which are furnished while the individual requires continual medical care, shall constitute an expense for medical care. For example, medical care includes the entire cost of institutional care for a person who is mentally ill and unsafe when left alone. While ordinary education is not medical care, the cost of medical care includes the cost of attending a special school for a mentally or physically handicapped individual, if his condition is such that the resources of the institution for alleviating such mental or physical handicap are a principal reason for his presence there. In such a case, the cost of attending such a special school will include the cost of meals and lodging, if supplied, and the cost of ordinary education furnished which is incidental to the special services furnished by the school. Thus, the cost of medical care includes the cost of attending a special school designed to compensate for or overcome a physical handicap, in order to qualify the individual for future normal education or for normal living, such as a school for the teaching of braille or lip reading. Similarly, the cost of care and supervision, or of treatment and training, of a mentally retarded or physically handicapped individual at an institution is within the meaning of the term "medical care."

An institution will be considered a "special school" within the meaning of the regulations where education is only "incidental" to medical care. See *C. Fink Fischer, supra; Arnold P. Grunwald*, 51 T.C. 108 (1968). During the period of David Ripple's attendance, the Matthews School provided an academic program with emphasis upon corrective and remedial reading. The school was described by its founder and director as providing for the educational problems of children who had both educational and emotional problems.[5] At the Matthews School, the training in remedial reading, which the petitioners tacitly recognize to be an educational rather than a medical service, was not incidental to medical care. Education was the primary function. The Matthews School was not a "special school" within the meaning of the regulations. Accordingly, the expenses of the meals and lodging were not for medical care but were nondeductible personal expenses.

In addition, the petitioners paid tuition to the Matthews School in calendar 1964 and 1965 in the respective amounts of $3,450 and $2,050. Only if, and to the extent that, such fees were for the mitigation or treatment of David Ripple's emotional problems, would those fees be deductible expenses for medical care. See *C. Fink Fischer, supra; Hobart J. Hendrick, supra.*

Whether a service constitutes medical care depends upon its therapeutic nature to the individual involved. See *C. Fink Fischer, supra;* Rev. Rul. 67–339, 1967–2 C.B. 126. There must be a proximate relationship between the medical deficiency of the individual and the service he received. *Arnold P. Grunwald, supra.* It must be established that the tuition was paid for services provided by the Matthews School which with respect to David were primarily medical in nature rather than educational.

The petitioners do not argue that the remedial reading classroom instruction in itself mitigated or treated their son's disease. They apparently view this instruction along with any education that their son may have received as being incidental to a therapeutic program designed in conjunction with the individual psychotherapy supplied by Dr. Abrams to break down their son's inhibitions to learning. The petitioners do claim that the efforts of the Matthews School were devoted to overcoming their son's psychological impediment to learning. They argue that their son received classroom therapy at the Matthews School that supported the individual therapy that he received from Dr. Abrams. The record in this case does not support the petitioners' contentions.

---

[5] It appears from the conflicting testimony of Miss Matthews and Mr. Schatz that the character of the school changed after Mr. Schatz became director. However, we are not concerned here with the character of the school other than at the time David Ripple was enrolled.

No evidence was introduced as to the actual nature of the classroom instruction or how that instruction was designed to deal with David Ripple's emotional problems, as well as his academic deficiencies. Miss Matthews, who was the director of the school, for all but 1 month of the approximately 1½ years that David Ripple was enrolled, stated that the classroom instruction was directed towards the correction of reading deficiencies. She did not indicate that the classroom instruction was designed to be therapeutic.

The report issued by the Reading Clinic of the Department of Psychology at Temple University recommended psychiatric help to overcome David Ripple's inability to learn and reading help such as that offered by the Matthews School. The report called for separate approaches to solve David Ripple's emotional and academic problems.

David Ripple attended the Matthews School and contemporaneously received psychiatric services from Dr. Abrams. While Dr. Abrams discussed David Ripple's condition with his teachers, there was no evidence that they provided supportive therapy or modified their remedial reading program to overcome David Ripple's emotional problems.

The petitioners failed to show that classroom services provided by the Matthews School had a direct or proximate therapeutic effect on their son's disease. Compare *C. Fink Fischer, supra.*

On the record in the instant case, we must conclude that no part of the amount paid to the Matthews School was for medical care.

*Decision will be entered for the respondent.*