LAWRENCE D. GREISDORF AND MARIANNE C. A. GREISDORF, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4699–69SC. Filed August 31, 1970.

Lawrence D. Greisdorf, pro se.
*M. W. Piliaris*, for the respondent.

OPINION

The petitioners claim that the total amounts paid by them in 1967 to the Mills School on behalf of Elizabeth, the petitioner-wife's daughter, are deductible medical expenses under section 213 of the 1954 Code.[2]

Section 213 provides for a deduction of expenses paid during the taxable year for the medical care of a taxpayer's dependent suffering from a disease. Expenditures made to treat emotional difficulties, such as those experienced by Elizabeth, may qualify under this section as expenses paid for medical care. *Paul H. Ripple*, 54 T.C. 1442 (1970) ; *C. Fink Fischer*, 50 T.C. 164 (1968) ; *Hobart J. Hendrick*, 35 T.C. 1223 (1961).

In determining whether the petitioners' payments to the Mills School for Elizabeth's benefit qualify as medical deductions, we have carefully considered section 1.213-1 of the Income Tax Regulations. These regulations contain the following provision :

While ordinary education is not medical care, the cost of medical care includes the cost of attending a special school for a mentally or physically handicapped individual, if his condition is such that the resources of the institution for alleviating such mental or physical handicap are a principal reason for his presence there. In such a case, the cost of attending such a special school will include the cost of meals and lodging, if supplied, and the cost of ordinary education

---

[2] Sec. 213 of the 1954 Code was amended by Pub. L. 89–97, effective for taxable years beginning after Dec. 31, 1966, to read in part as follows :

(a) ALLOWANCE OF DEDUCTION.—There shall be allowed as a deduction the following amounts, not compensated for by insurance or otherwise—

(1) the amount by which the amount of the expenses paid during the taxable year * * * for medical care of the taxpayer, his spouse, and dependents (as defined in section 152) exceeds 3 percent of the adjusted gross income, * * *

* * * * * * *

(e) DEFINITIONS.—For purposes of this section—

(1) The term "medical care" means amounts paid—

(A) for the diagnosis, cure, mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure or function of the body,

(B) for transportation primarily for and essential to medical care referred to in subparagraph (A), * * *

No substantive change was made by Pub. L. 89–97 to sec. 213 which would affect the issue presently before us. See H. Rept. No. 213, 89th Cong., 1st Sess. (1965), 1965–2 C.B. 744–745.

furnished which is incidental to the special services furnished by the school. Thus, the cost of medical care includes the cost of attending a special school designed to compensate for or overcome a physical handicap, in order to qualify the individual for future normal education or for normal living, such as a school for the teaching of braille or lip reading. * * * [Sec. 1.213–1(e)(1)(v)(*a*), Income Tax Regs.]

In the present case, the Mills School will be regarded as a "special school," within the meaning of the regulations, if its resources for alleviating Elizabeth's mental handicap were a principal reason for her presence there and if its educational program was only incidental to its medical care function. *Paul H. Ripple, supra; C. Fink Fischer, supra.* See also *Arnold P. Grunwald,* 51 T.C. 108 (1968).

As should be apparent from our findings of fact, we believe that the Mills School adequately meets the criteria of a "special school." Its founder established the school to provide an environment where children with emotionally caused learning disabilities could learn to adapt effectively to a classroom situation. The objective of the Mills School was to produce more effective students and better adjusted individuals.

All members of the staff, including those who were not psychologists, had formal training in psychology and regularly kept abreast of current developments in training workshops at the school. Two psychiatrists were employed in a consultant capacity. The staff members, teachers and psychologists, met regularly to develop consistent approaches for dealing with the specific problems of the students.

As can be seen from Elizabeth's experience, the school provided an educational program that was highly individualized, permitting each child to progress at a rate suited to his special abilities and needs. Each student's course of study was devised to be supportive of the therapy which he received and to instill in him the necessary confidence to permit him to overcome his emotional and educational deficiencies. The scholastic program at the school was designed primarily to enhance a given child's psychological development and was used as a means to that end. The educational aspects of the Mills School were merely incidental to the school's principal goal of eliminating or reducing the learning disabilities of its students.

Elizabeth attended the Mills School at the recommendation of the psychiatrist who had been giving her therapy. He felt that her attendance at the school was important for the treatment of her emotional problems. Although it was difficult for them from a financial standpoint, the petitioners enrolled Elizabeth upon his recommendation in the expectation that Elizabeth would be helped to overcome her

emotional difficulties and resultant learning handicap. When progress was made in this regard, Elizabeth withdrew from the school and began attending public school. It seems clear from the record that the special resources available at the Mills School for alleviating Elizabeth's mental handicap were the principal reason for her enrollment there.

The regulations referred to earlier in our discussion list "a school for the teaching of braille or lip reading" as an example of an institution "designed to compensate for or overcome a *physical* handicap, in order to qualify the individual for future education or normal living." (Emphasis added.) We believe that the Mills School, with its emphasis on a child's *emotional* handicap, is equivalent in scope and purpose to a school for braille or lip reading, and we regard it as falling within the purview of the above-quoted regulatory provision.

The case is distinguishable from the *Ripple, Grunwald*, and *Fischer* cases, *supra*, wherein we held, on the facts then before us, that the school in question did not qualify as a "special school" under the applicable regulations.

In those cases, although certain therapeutic benefits were derived by handicapped students from the services provided by the schools, the evidence showed the essential service of each school to be educational in nature. In the present case, while educational benefits may have been incidentally obtained by Mills students, their attendance at the school was prompted by their mental handicaps and had principally a therapeutic value.

Even if we were to assume that this were not the case for most Mills School students, which assumption would be contrary to the record, there can be no doubt that the school performed a therapeutic function as far as Elizabeth was concerned. She was sent to the institution to further her treatment, and the program that was developed for her there was carefully designed to provide the necessary services to eliminate the emotional barriers to her future normal scholastic success. In *C. Fink Fischer, supra*, we stated (at page 174):

The cases, the rulings, and the regulations make clear that whether a service for which an expenditure is made constitutes medical care will depend upon its therapeutic nature to the individual, and not upon the title of the person rendering the service,[5] or whether the expense is "medical" to all persons,[6] or the general nature of the institution in which the service is rendered.[7] [Footnotes omitted.]

Elizabeth suffered from a mental handicap which if untreated would no doubt have become "fixated" and even more disabling and which prevented her from pursuing normal education and normal living. The resources of the Mills School for alleviating Elizabeth's mental

instability were the principal reason for her attendance there and after the successful application of those resources, resulting in the hoped-for improvement in her mental condition, she was withdrawn from the school and attended the local public schools. This is precisely the type of situation covered by the provisions of section 1.213–1, Income Tax Regs. We decide this issue in favor of petitioners and conclude that the $1,200 expended for Elizabeth's tuition in 1967 was paid for the mitigation and treatment of her disease.

The petitioners also deducted on their 1967 return expenses of $210.23 which were incurred at the Mills School. They have offered no evidence in connection with these miscellaneous expenditures and have therefore failed to meet the burden of establishing their deductibility. Rule 32 of the Rules of Practice of this Court; *Welch* v. *Helvering*, 290 U.S. 111 (1933). We uphold the respondent's determination in this respect.

*Decision will be entered under Rule 50.*