Devora R. Shidler v. Commissioner.
Shidler v. Commissioner
Docket No. 5664-69 "SC".
United States Tax Court
T.C. Memo 1971-126; 1971 Tax Ct. Memo LEXIS 213; 30 T.C.M. (CCH) 529; T.C.M. (RIA) 71126; May 27, 1971, Filed *213 Respondent determined that the amount paid by petitioner in 1967 as tuition for her son, Philip, at a private school was not deductible as a medical expense under section 213, I.R.C. 1954. Petitioner claims the deduction on the ground that the educational services and environmental conditions provided by the school were an essential part of a medical regimen designed to alleviate Philip's epileptic disorder. Held: the educational program which was provided did not constitute "medical care" within the meaning of the statute; the school which Philip attended did not qualify as a "special school" within the purview of section 1.213-1(e)(1)(v)(a), Income Tax Regs., and the tuition expense was not incurred primarily for the purposes of medical care. George Louis Creamer, Equitable Bldg., Denver, Colo., for the petitioner. Fredrick B. Strothman, for the respondent. HOYT
Memorandum Findings of Fact and Opinion HOYT, Judge: Respondent determined a deficiency in petitioner's income tax for the taxable year 1967 in the amount of $193.36. The only issue presented for our decision is whether the amount paid by petitioner in 1967 as tuition for her son, Philip, at a private school is deductible *214 as a medical expense under section 213, I.R.C. 1954. [1]
Findings of Fact Some of the facts have been stipulated. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. Devora R. Shidler, petitioner, is an individual who resided in Denver, Colorado, at the time she filed her petition in this case. Petitioner filed her income tax return for the taxable year 1967 with an undisclosed office of the internal revenue service. Philip Morton Shidler, petitioner's son, was born on October 1, 1952. When he was seven months old he had his first epileptic seizure. A year later Philip began to have seizures whenever he developed a fever or became excited. During this period he was under the medical care of Doctors Platner, Rosenberg, and Lewis of Denver, Colorado. These doctors continued to treat Philip for his epilepsy through the year 1967. The following is an extract from the school census record taken from the file of the Denver Public Schools: Name: SHIDLER, Phillip [sic] Morton Birthdate: 10-1-52 (verified) Father: George (deceased)
Mother: Ruth
Address: 1540 Utica Street
Entered as follows:
Greenlee Elem.
Kdg.
9- 4-57
Colfax Elem.
1
1-15-58
Hillel Academy
1
9- 3-58
Hillel Academy
2
9- 9-59
Colfax Elem.
3
9- 7-60
Withdrew (Excluded)
1-30-61
[2] *215 Re-entered Randell
4
9- 6-61
Exclusion (Formal)
11-28-62
Wallace Vilage
5
11- 1-63
Wallace Village
6
11- 1-64
Wallace Village
7
11- 1-65
Randell
8
9- 6-66
Randell
9
9- 5-67
Randell
10
9- 5-68
The only public schools which Philip ever attended were Colfax Elementary School and Hillel Academy. Both of these schools refused to allow him to continue his course of study for more than a short time due to his recurring epileptic seizures. After his exclusion from Colfax Elementary School on January 30, 1961, Philip was not allowed to attend any other public schools in Denver. During the one and a half year period prior to November 1, 1963, Philip did not attend any school at all. At some time during this period Philip was taken to the Vecher Clinic, a diagnosis center which is part of the Children's Hospital. The clinic recommended that Philip see a neurologist, Barbara Thulin, M.D. After Dr. Thulin was contacted, she consulted with Philip's other doctors. As a result of these consultations, the doctors decided upon the proper medication for Philip and recommended that he attend the Wallace Village School for the Handicapped in Broomfield, Colorado. 530 During the period that Philip attended the Wallace Village School, all of the school's *216 "teachers" were therapists. After he had attended the school for three years it appeared that Philip's education would be best served if he transferred to some other school which placed a greater emphasis on academics. In this regard, the director of Wallace Village School recommended the Randell School of Denver (Randell), which was a private school. Philip entered Randell as an eighth grader on September 6, 1966. The primary reason for Philip's enrollment at Randell was to enable him to pursue a college-preparatory education in a more challenging educational environment. Petitioner does not know of any school other than Randell in the Denver area which would be capable of coping with or would admit children with Philip's type of disability. Randell was founded in 1920. The school provides a regular coeducational program for its students, grades one through twelve. It specializes in general education preparing students for college. During 1967 there were only about eight or nine students in each class. The classes are kept small to enable the instructor to be aware of the needs of each student and to give individual attention. The curriculum which was offered during 1967 was standard *217 and conventional and followed the general course of education prescribed by the state department of education. During 1967, although no formal physical education program was offered, the school arranged for recreational facilities for bowling, golf, soccer, skiing, and softball when interest was manifested by the students. Randell does not hold itself out to be an institution which individuals attend to receive medical care. The school does not maintain on its staff a medical doctor, psychiatrist, psychologist, or nurse, and did not do so during 1967. Medical services or therapy are the responsibility of the parent. There has not been any medical program, either general or special, as a part of the curriculum. There are no special classes or courses for children who are either retarded, emotionally disturbed, or otherwise troubled with psychiatric problems. Randell was not equipped to deal with unusual mental or emotional problems of individual students. All of the students within each grade pay the same tuition and receive the same program of instruction. Randell does not accept students unless it appears that they are capable of graduating from the school and going on to college. *218 However, Randell does accept students with special problems. About 30 percent of the students there in the year in question had special problems of one sort or another, educational, emotional or medical. The rest of Randell's student body was made up of boys and girls who attended to acquire the special small-class college preparatory education offered there, as a matter of preference. While he was going to Randell, Philip was required to take medication three times a day in order to help prevent seizures. Since Philip might have a seizure if he forgot to take his medication, petitioner made arrangements with the school for one of the teachers to remind Philip to take his medication at lunch every day. Sometimes seizures would be precipitated by sudden changes or excessive mental pressure. He had to give up bowling and golf because seizures would also be provoked under those conditions. Such incidents made Philip feel different from other children and this sometimes caused him to be unhappy. In other respects, however, Philip was able to participate in all of the classes, courses and extracurricular activities that were offered to the other students. Although Philip was slightly below *219 average in his academic achievement, he was able to carry a full course load in every grade. At some time during his enrollment at Randell, Philip was on the student council. In addition to the medication prescribed, Philip's doctors felt that it was important for him to lead a normal life insofar as possible. It does not appear that Philip's doctors recommended that he attend Randell School, but one of his doctors stated that "adequate educational opportunities were best served" by enrolling Philip in any private school where he would have smaller classes and more individual attention. They did not require that the school chosen by petitioner offer any particular type of treatment or have any special facilities for epileptic children. Randell was a good school for Philip because the small faculty and student body were an "understanding" group who recognized Philip's problem and were therefore better prepared to take care of him if he had one of his seizures. Also, they understood Philip's problem better because the 531 school had had experience with other students who were epileptics. The faculty was advised as to the steps that should be taken in the event that an epileptic child *220 had a seizure during the school period. The nature of these "steps" is not disclosed by the record. There is no evidence that any employee of the school was trained to render special services designed to help alleviate, compensate, or otherwise overcome epileptic disorders. Moreover, Randell will not allow an epileptic child to attend the school if the child's handicap interferes with the normal procedure of the school or is detrimental to the other students. There is no evidence that Philip's attendance at Randell reduced either the frequency or severity of his seizures. It was the feeling of Randell's headmaster, however, that Randell offered a better opportunity for an epileptic such as Philip because the smaller classes reduced the possibility of pressure and feelings of insecurity. He also felt that the individual attention that was given to the students and the quiet environment of the classrooms enhanced Philip's ability to do creditable academic work. During 1967 petitioner was a widow and worked as a payroll clerk earning $525 a month. Se also received social security benefits which helped to support herself, Philip, and one other dependent child. Petitioner paid $1,119.10 *221 to Randell during 1967 for Philip's tuition, and claimed this amount as a medical expense deduction on her income tax return for that year. In his statutory notice of deficiency, respondent denied the deduction on the grounds that the expenditure represented a nondeductible personal expense rather than a deductible medical expense. The $1,119.10 which petitioner paid to Randell was primarily and directly an expense for the ordinary and basic education of Philip; it was not the cost of attending a special school for a mentally or physically handicapped individual; it was the cost of basic education which was not incidental to any special services furnished to Philip by the school. There was no special medical attention, care or treatment (within the ordinary meaning of those terms) given to Philip during 1967 at Randell, and the services provided by the school did not have a direct or proximate therapeutic effect on his handicap. The sum of $1,119.10 which was paid in 1967 to Randell was a personal, nondeductible expense of petitioner, and it was not an expenditure for medical care of Philip within the scope of section 213 of the 1954 Code. Opinion The only issue presented for our *222 consideration is whether the amount paid by petitioner in 1967 as tuition for her son, Philip, at a private school is deductible as a medical expense under section 213. The pertinent parts of section 213 read as follows: (a) Allowance of Deduction. - There shall be allowed as a deduction the following amounts of the expenses paid during the taxable year, * * * for medical care of the taxpayer, his spouse, or a dependent (as defined in section 152) - * * * (e) Definitions. - For purposes of this section - (1) The term "medical care" means amounts paid - (A) for the diagnosis, cure, mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure or function of the body * * * The applicable regulations provide that for educational costs to be treated as a medical expense the individual must attend a "special school" with resources for alleviating the given mental or physical handicap and these resources must be the principal reason for the individual's presence there. [3] *223 *224 *225 *226 Petitioner argues that the Randell School is the "nearest thing to a 'special school' which exists in the circumstances." While we recognize that Randell School had certain special characteristics, it is clear that Randell was not a "special school" as that term is used in the regulations. An institution will be considered to be a "special school" where education is only "incidental" to medical care. Lawrence D. Greisdorf 54 T.C. 1684 (1970), acq. 1970-46 I.R.B. 6; Paul H. Ripple, 54 T.C. 1442 (1970); cf. C. Fink Fischer, 50 T.C. 164 (1968); Arnold P. Grunwald, 51 T.C. 108 (1968). Randell's primary concern is to afford its students a general education which will prepare them for college. Randell does not have any medical facilities and does not hold itself out to be an institution which individuals attend to receive medical care. It is the responsibility of the parents to obtain medical *227 services or therapy for their children from sources outside the school. Section 1.213-1(e) (1) (v), Income Tax Regs., states, in part, that "[the] extent to which expenses for care in an institution other than a hospital shall constitute medical care is primarily a question of fact which depends upon the condition of the individual and the nature of the services he receives (rather than the nature of the institution)." In Arnold P. Grunwald, supra, the taxpayer claimed, as the petitioner does herein, that educational services constituted "medical care." We said (51 T.C. at 115): In a case of this type it is incumbent on the taxpayer claiming a deduction for the cost of sending his handicapped child to a school not regularly engaged in providing medical services to establish that the services received are primarily medical in nature and not educational. It is not enough herein to show that "therapeutic benefits" were derived from the services [the child] received at [the school]. That fact alone is insufficient to make such services medical rather than educational. We must consider both the condition of the individual and the services he received, first independently and then together, *228 to ascertain whether the design of the latter is such as to meet the requirements of the former. There must be a proximate relationship between the two in order to establish that the expense was incurred primarily for purposes of medical care. The required proximate relationship is not present here. In other cases we have likewise adhered to the principle that to be deductible as a medical expense, the expense must bear a direct and proximate therapeutic relation to some physical or mental function or structure of the body. Paul H. Ripple, supra, Carl A. Gerstacker, 49 T.C. 522 (1968); David K. Carlisle, 37 T.C. 424 (1961); and Edward A. Havey, 12 T.C. 409 (1949). This principle is a companion to another well- 533 settled principle that expenses beneficial to a person's general health and well-being, but permeated with personal considerations, do not constitute "medical care" as defined in section 213(e)(1) and the regulations promulgated thereunder. Arnold P. Grunwald, supra; see also Edward A. Havey, supra; and H. Grant Atkinson, Jr., 44 T.C. 39 (1965). We have found that the primary reason for Philip's enrollment at Randell was to enable him to pursue a college-preparatory education *229 in an educational environment which was more challenging than that which was afforded by the school which he had previously attended. In return for the tuition paid by petitioner, Randell merely provided Philip with the standard, conventional program of education prescribed by the Colorado State Department of Education. Randell does not maintain on its staff a medical doctor, psychiatrist, psychologist, or nurse, and did not do so during 1967. There were no members of the Randell staff during 1967 who were trained to render special services designed to help compensate or overcome the handicap of epilepsy. Philip's tuition was the same as that paid by the other students at Randell. Likewise, he received the same program of instruction as the other students in his class. It is clear from the record that Philip was afforded only very minor consideration by the faculty on account of his epileptic condition. Each day at lunch a faculty member would remind him to take his medication. Also the faculty was advised to take certain "steps" (the nature of which is not disclosed by the record) in the event Philip had an epileptic seizure at school. It is clear, however, that no member of the faculty *230 was specially trained to alleviate or treat epileptic seizures. In addition to the medication which was prescribed for Philip, his doctors felt that it was important for him to lead a normal life insofar as possible. Petitioner argues that sending Philip to a regular school with normal children was, therefore, an important part of Philip's medical regimen. She emphasizes the fact that Randell was a very small school with a quiet atmosphere, and asserted that this environment reduced the possibility of any emotional stress and tensions arising in Philip which might precipitate a seizure. We have held in the past that the mere fact that a doctor prescribes a certain regimen for his patient does not mean that it constitutes "medical care" within the meaning of section 213. H. Grant Atkinson, Jr., supra; John J. Thoene, 33 T.C. 62 (1959); and John L. Seymour, 14 T.C. 1111 (1950). Furthermore, it does not even appear that Philip's doctors recommended that he attend Randell School. One of his doctors merely stated that "adequate educational opportunities" were best served by enrolling Philip in any private school where he would have smaller classes and more individual attention. The doctors *231 did not require that the school chosen by petitioner offer any particular type of treatment or have any special facilities for epileptic children. Although there is no evidence of record that any one of Philip's doctors felt that Philip's experience at the Randell School helped to reduce the frequency or severity of his epileptic seizures, we think that it is entirely possible that Philip did receive some incidental therapeutic benefit from obtaining his education in a relatively quiet environment. However, as we stated in the Grunwald case, supra, the mere fact that therapeutic benefits were received does not transform purely educational services into "medical care" within the meaning of section 213. See also Martin J. Lichterman, 37 T.C. 586 (1961); John J. Thoene, supra. It is clear that the educational services provided at Randell were not designed to help compensate or overcome Philip's handicap of epilepsy. These services did not have a direct or proximate therapeutic effect on Philip's handicap, and under these circumstances we cannot find that the tuition expense was incurred primarily for purposes of medical care. Arnold P. Grunwald, supra; Paul H. Ripple, supra.Although *232 the educational atmosphere at Randell may have been helpful to Philip, the services and conditions provided were principally educational in nature, even if permeated with personal considerations, and not medical or therapeutic. We must hold that they did not qualify as "medical care" as defined in section 213(e)(1) and the regulations promulgated thereunder. Decision will be entered for the respondent. 534 Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended.↩
2. Philip previously entered Randell in the first grade at some undisclosed date but had to leave shortly thereafter for reasons undisclosed by the record.
3. Sec. 1.213-1 Medical, dental, etc., expenses * * * (e) Definitions - (1) General. (i) The term "medical care" includes the diagnosis, cure, mitigation, treatment, or prevention of disease. Expenses paid for "medical care" shall include those paid for the purpose of affecting any structure or function of the body or for transportation primarily for and essential to medical care. See subparagraph (4) of this paragraph for provisions relating to medical insurance. (ii) * * * Deductions for expenditures for medical care allowable under section 213 will be confined strictly to expenses incurred primarily for the prevention or alleviation of a physical or mental defect or illness. * * * However, an expenditure which is merely beneficial to the general health of an individual, such as an expenditure for a vacation, is not an expenditure for medical care. * * * (v) The cost of in-patient hospital care (including the cost of meals and lodging therein) is an expenditure for medical care. The extent to which expenses for care in an institution other than a hospital shall constitute medical care is primarily a question of fact which depends upon the condition of the individual and the nature of the services he receives (rather than the nature of the institution). A private establishment which is regularly engaged in providing the types of care or services outlined in this subdivision shall be considered an institution for purposes of the rules provided herein. In general, the following rules will be applied: (a) Where an individual is in an institution because his condition is such that the availability of medical care (as defined in subdivisions (i) and (ii) of this subparagraph) in such institution is a principal reason for his presence there, and meals and lodging are furnished as a necessary incident to such care, the entire cost of medical care and meals and lodging at the institution, which are furnished while the individual requires continual medical care, shall constitute an expense for medical care. For example, medical care includes the entire cost of institutional care for a person who is mentally ill and unsafe when left alone. While ordinary education is not medical care, the cost of medical care includes the cost of attending a special school for a mentally or physically handicapped individual. If his condition is such that the resources of the institution for alleviating such mental or physical handicap are a principal reason for his presence there. In such a case, the cost of attending such a special school will include the cost of meals and lodging, if supplied, and the cost of ordinary education furnished which is incidental to the special services furnished by the school. Thus, the cost of medical care includes the cost of attending a special school designed to compensate for or overcome a physical handicap, in order to qualify the individual for future normal education or for normal living, such as a school for the teaching of braille or lip reading. Similarly, the cost of care and supervision, or of treatment and training, of a mentally retarded or physically handicapped individual at an institution is within the meaning of the term "medical care" (b) Where an individual is in an institution and his condition is such that the availability of medical care in such institution is not a principal reason for his presence there, only that part of the cost of care in the institution as is attributable to medical care (as defined in subdivisions (i) and (ii) of this subparagraph) shall be considered as a cost of medical care; meals and lodging at the institution in such a case are not considered a cost of medical care for purposes of this section. For example, an individual is in a home for the aged for personal or family considerations and not because he requires medical or nursing attention. In such case, medical care consists only of that part of the cost for care in the home which is attributable to medical care or nursing attention furnished to him; his meals and lodging at the home are not considered a cost of medical care.