JAMES R. MARTIN and VENEDA R. MARTIN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Martin v. Commissioner
Docket No. 10123-74.
United States Tax Court
T.C. Memo 1975-362; 1975 Tax Ct. Memo LEXIS 14; 34 T.C.M. (CCH) 1564; T.C.M. (RIA) 750362; December 22, 1975, Filed James R. Martin, pro se. Robert E. Touchton, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined a deficiency in petitioners' income tax for the calendar year 1972 in the amount of $103.95. The only issue for decision is whether the amounts of $267 and $200 paid to the Kentucky Country Day School and Chance Nursery and Kindergarten, Inc., respectively, are deductible by petitioners as medical expenses within the meaning of section 213, I.R.C. 1954. [1]
FINDINGS OF FACT
*15 Some of the facts have been stipulated and are found accordingly. Petitioners, husband and wife, who resided at Louisville, Kentucky at the time of the filing of their petition in this case, filed a joint Federal income tax return for the calendar year 1972 with the District Director of Internal Revenue, Louisville, Kentucky. Petitioners kept their records and prepared their income tax return on the cash basis of accounting. James R. Martin (hereinafter referred to as petitioner) was a contractor during 1972 and his wife, Veneda R. Martin, was a housewife. Petitioners had three children. Neither of their two older children attended a pre-school program or a private school. Their youngest son, Jimmy, was born with a severe hearing problem. He had an 85 "DB" hearing loss and is legally classified as deaf. Jimmy wears two hearing aids and because of these hearing aids and the early training he received at the Bill Wilkerson Center in self-discipline with respect to listening, he receives about half of spoken words and can interpret the meaning of conversations from hearing this portion of the words. He functions as a fairly normal person. Jimmy has never been taught formally to *16 lip-read but has picked it up for himself to some extent. He has been taught to listen. Petitioners had taken Jimmy to the Bill Wilkerson Speech and Hearing Clinic in Nashville, Tennessee from the time he was six months old and were taking him there in early 1972. At the suggestion of persons at this clinic, petitioners placed Jimmy in the Chance Nursery and Kindergarten, Inc. prior to 1972 and he was continuing to attend this pre-school in the first part of 1972. The Chance Nursery and Kindergarten, Inc., which is located in Louisville, Kentucky, is not a school specifically for the handicapped and does not primarily function for the purpose of alleviating and treating the physically handicapped. The furnishing of general pre-school education is the primary objective of the school. The only medical care which is given to students at the school is emergency aid in case of illness or accident. One of the teachers at the Chance Nursery and Kindergarten, Inc. is a registered nurse. During the year 1972 the school did not furnish medical services or care to Jimmy or any other student other than as above indicated. Jimmy took the same basic curriculum as other students in his class but *17 because of his hearing handicap was given extra time by his teachers. In 1972 petitioners paid the Chance Nursery and Kindergarten, Inc. $200 as tuition for Jimmy. This was the same tuition charged the other students and was for Jimmy's basic pre-school education. No extra charges were made to petitioners because of Jimmy's hearing handicap. Jimmy received the same educational services in exchange for his tuition as did all other students at the nursery and kindergarten in exchange for theirs. In 1972 the Chance Nursery and Kindergarten, Inc. had an average of approximately one teacher to nine students with a ratio of one to six for two-year-olds; one to seven for three-year-olds; and one to ten for four-year-olds and kindergarten students. This teacher/pupil ratio is lower than is legally required so that the school can give each child who attends more individual attention. In practice the school accepts children with various types of specific problems who are otherwise normal, healthy, growing individuals. The school has accepted children with emotional disturbances, speech impediments and hearing losses. The philosophy of the school in accepting such students was in 1972 and has *18 been that a child with a problem has the same needs as other children, i.e. to play, to learn, to have real friends, to accept life as he will have to live it with or without a handicap. The school's philosophy is that a child with a handicap learns to deal with a handicap and overcomes it through being with "normal" people and that by accepting children with handicaps the normal child learns that people with problems are not different from others in their interests, needs and desires. The school does not maintain on its staff medical doctors or teachers who specialize in teaching only the deaf or handicapped student. Jimmy's teacher kept in touch with his therapist and the therapist came to visit the teacher to instruct her on how to work with Jimmy. The objective in this association was to help Jimmy function better with normal children. However, the primary emphasis of the Chance Nursery and Kindergarten, Inc. is on education rather than alleviation or treatment of deafness. Jimmy received no special tutoring at Chance school and there were no other deaf children in the class with Jimmy at the school. Later in 1972, at the suggestion of the Kentucky Speech and Hearing Center *19 to which petitioners were taking Jimmy at that time in 1972, Jimmy was placed in the first grade in the Kentucky Country Day School. The Kentucky Country Day School is not a special school for physically handicapped individuals and provides no special treatment or training for such individuals. The school does not maintain on its staff medical doctors or teachers who specialize in teaching deaf or other handicapped students. The primary purpose of the school is quality education rather than alleviation of deafness or other physical handicaps. The objective of the school is to provide general education with an emphasis on college preparatory work. The Kentucky Country Day School was not equipped to and did not furnish medical services or care to Jimmy or to any other student during 1972. Jimmy took the same curriculum as every other student in his school grade and year. Petitioner paid $267 for tuition for Jimmy at the Kentucky Country Day School in 1972 and this tuition was the same as that paid by other students, and was paid for the basic education provided to students in Jimmy's school grade and year. The Kentucky Country Day School has classes from kindergarten through the twelfth *20 grade. During 1972 petitioners took Jimmy to Nashville once every three or four months to the Bill Wilkerson Speech and Hearing Clinic but were phasing out the services of that clinic to Jimmy during that year. At the clinic an attempt would be made to develop Jimmy's listening skills. Also in 1972 petitioners were taking Jimmy to the Hearing and Speech Center of the Kentucky Easter Seal Society in Louisville where he received therapy, audiological evaluations and hearing aid management. Prior to 1971, there had been no services comparable to those offered in late 1971 and 1972 by the Kentucky Easter Seal Society in the Louisville area. When an elementary school was to be chosen for Jimmy, one of the professional staff of the Kentucky Easter Seal Society Hearing and Speech Center visited several schools in the Louisville area to determine which school would meet the needs and offer the best situation for Jimmy. After consultation and conferences, the professional staff of the Center determined that Kentucky Country Day School would best meet Jimmy's needs and recommended this school for Jimmy's educational placement. In 1972 Jimmy attended first grade at the Kentucky Country Day *21 School. He has continued to attend this school and at the time of the trial of this case, was in the third grade at the school. In the Jefferson County public school system, of which Louisville is a part, there are classes for the deaf and classes for the hard of hearing. However, petitioners were of the opinion that for Jimmy such classes would have caused regression. By the age of six, Jimmy was able to function as a person with normal hearing in a small class situation. On their joint income tax return for the calendar year 1972 petitioners claimed as a medical expense deduction the $200 tuition paid to the Chance Nursery and Kindergarten, Inc. and the $267 tuition paid to the Kentucky Country Day School in that year. Respondent, in his notice of deficiency, disallowed these amounts as medical expenses with the explanation: (a) It is determined that the amounts of $267.00 and $200.00 paid to the Kentucky Country Day School and Chance Pre-School, respectively, do not qualify as medical expenses within the meaning of Section 213 of the Internal Revenue Code. * * * OPINION Section 213 provides for the allowance of a deduction, with the limitations *22 therein specified, for medical care of a taxpayer, his spouse and dependents. [2]
Section 1.213-1(e)(1)(v)(a), Income Tax Regs., provides in part as follows: (a) * * * While *23 ordinary education is not medical care, the cost of medical care includes the cost of attending a special school for a mentally or physically handicapped individual, if his condition is such that the resources of the institution for alleviating such mental or physical handicap are a principal reason for his presence there. In such a case, the cost of attending such a special school will include the cost of meals and lodging, if supplied, and the cost of ordinary education furnished which is incidental to the special services furnished by the school. Thus, the cost of medical care includes the cost of attending a special school designed to compensate for or overcome a physical handicap, in order to qualify the individual for future normal education or for normal living, such as a school for the teaching of braille or lip reading. Similarly, the cost of care and supervision, or of treatment and training, of a mentally retarded or physically handicapped individual at an institution is within the meaning of the term "medical care." * * *
We have held the provisions of this regulation to be a reasonable interpretation of the statute. *24 H. Grant Atkinson, Jr.,44 T.C. 39, 49-51 (1965). Petitioners do not contend that either Chance Nursery and Kindergarten, Inc. or the Kentucky Country Day School are "special schools" within the meaning of the regulations. Their contention is that each of these schools is "a special school for their son." Petitioners point out that their view that Jimmy would regress in the special schools provided in the public school system is shared by the clinics to which they took their son. Petitioners believe that normal kids teach deaf kids to talk and that being in a classroom with normal children in small classes stimulated Jimmy's learning of language and motivated him to function as a normal child. Petitioners therefore concluded that a school for normal children with a regular academic curriculum for normal children is a "special school" for Jimmy. Petitioner testified that his son was passing from one level to the other in the private schools he attended and was acquiring sufficient educational skills at his level necessary to progress to the next level. He stated, however, that he was not concerned in the school situation with Jimmy's academic progress other than *25 with his ability to learn speech and language. He also testified that Jimmy had some outside tutoring, but none at either of the schools he attended. Petitioner further stated that at the level at which Jimmy was in 1972 he would in his opinion have been unable to cope with conditions at a public school, but that he hoped that in the near future he would be able to cope with public school conditions with the good background that had been afforded him in the private schools. The facts in the instant case and petitioners' position with respect thereto are not substantially different from those in Arnold P. Grunwald,51 T.C. 108 (1968). That case involved tuition paid for the education of the taxpayers' blind son at a college preparatory school which had no special medical facilities for treatment of handicapped students and did not maintain on its staff medical doctors or teachers who specialized in teaching blind or other handicapped students. The school involved in that case was quite comparable to the Kentucky Country Day School. Attending a school of this caliber enabled the blind student through his association with normalseeing students to grow in confidence *26 in his learning capacities and to function better socially, and to achieve an emotional sturdiness which would enable him to function in a sighted world, an ability he might not have achieved without attendance at the private school. The taxpayer in the Grunwald case, supra, argued that the tuition and associated expenses for his blind child at the private school were incurred for the primary reason of alleviating the handicap of blindness by enabling the child to develop specific functions of body and mind not required by those who see, thereby restoring to the maximum extent possible the child's ability to live a normal, useful and satisfactory life. Though worded differently, this argument is substantially the same as the argument made by petitioner in the instant case. After pointing out that it was clear that the school which the child involved in the Grunwald case attended was not a "special school" as that term is used in section 1.213-1(e)(1)(v)(a), Income Tax Regs., we concluded that the tuition and related expenses did not constitute medical expenses within the meaning of the statute. We stressed the fact that what the school there involved rendered in return *27 for tuition was educational services and that the child received the same educational services in exchange for the tuition expense of his parents as did all other students at the school in exchange for the tuition paid on their behalf. Another case with facts similar to those involved in the instant case is Martin J. Lichterman,37 T.C. 586 (1961). The facts in that case showed that a child who suffered from asthma and had deep psychological problems induced by the asthmatic attacks had attended a private school at the suggestion of his doctor. The child was one of six children. The other five children attended parochial school where the yearly tuition was only $20 each. In the Lichterman case, supra, we found as a fact that the parents did not place the child in the private school for the purpose of giving him an education but rather for the purpose of having him develop to the point where he was able to live a normal life and cope in a normal situation. The child involved in the Lichterman case had been taught by a tutor prior to entering the private school, and after being in the private school, was again taught by a tutor. We concluded that the tuition *28 and related expenses paid by the taxpayer to the private school on behalf of their asthmatic child were not deductible as medical expenses since the school was not a special school within the meaning of the regulations, there was not available at the school medical care and availability of medical care at the school was not the principal reason for the child's presence there. We pointed out that the school there involved was primarily an educational institution teaching the usual academic courses. We held that although the atmosphere and routine of the private school and the association with other children were beneficial to the taxpayers' child, the school was not furnishing "medical care" to the child within the meaning of the statute and regulations. In both the Grunwald and Lichterman cases, supra, we distinguished such cases as Hobart J. Hendrick,35 T.C. 1223 (1961) and C. Fink Fischer,50 T.C. 164, 175 (1968), where we held that part of the amounts paid to the school were for services rendered to the child by doctors or other medical personnel retained by the school to render medical services and part for ordinary education. In *29 the Hendrick and Fischer cases, supra, we held that amounts paid by the parents of the handicapped child for tuition and other expenses of the same type and amount paid by normal children attending the school were not deductible as medical expenses but that the amounts paid to the school which were for direct medical services were properly deductible as medical expenses. On the basis of all the evidence in this case, we conclude that petitioner is not entitled to deduct as medical expenses under section 213 the $200 paid to the Chance Nursery and Kindergarten, Inc. and the $267 paid to the Kentucky Country Day School in 1972. Decision will be entered for the respondent.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended.↩
2. SEC. 213. MEDICAL, DENTAL, ETC., EXPENSES. (a) Allowance of Deduction.--There shall be allowed as a deduction the following amounts, not compensated for by insurance or otherwise-- (1) the amount by which the amount of the expenses paid during the taxable year (reduced by any amount deductible under paragraph (2)) for medical care of the taxpayer, his spouse, and dependents (as defined in section 152) exceeds 3 percent of the adjusted gross income, and (2) an amount (not in excess of $150) equal to one-half of the expenses paid during the taxable year for insurance which constitutes medical care for the taxpayer, his spouse, and dependents. (b) Limitation with Respect to Medicine and Drugs.--Amounts paid during the taxable year for medicine and drugs which (but for this subsection) would be taken into account in computing the deduction under subsection (a) shall be taken into account only to the extent that the aggregate of such amounts exceeds 1 percent of the adjusted gross income. * * *↩