DONALD R. PFEIFER AND NANCY J. PFEIFER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Pfeifer v. Commissioner
Docket No. 6241-76.
United States Tax Court
T.C. Memo 1978-189; 1978 Tax Ct. Memo LEXIS 325; 37 T.C.M. (CCH) 816; T.C.M. (RIA) 780189; May 24, 1978, Filed *325 Held, costs of sending dependent child to a private school are not deductible under sec. 213, I.R.C. 1954. Paul R. Hodgson, for the petitioners. James D. Thomas, for the respondent. WILES
MEMORANDUM FINDINGS OF FACT AND OPINION WILES, Judge: Respondent determined a $663.08 deficiency in petitioners' 1972 Federal income taxes. The only issue we must decide is whether certain expenditures incurred by petitioners in sending their son *326 Mark to a private school constitute expenses paid for medical care. FINDINGS OF FACT Some facts have been stipulated and are found accordingly. Petitioners filed their 1972 joint Federal income tax return with the Internal Revenue Service Center, Austin, Texas. When they filed their petition in this case, petitioners were legal residents of Tulsa, Oklahoma. Petitioners have four dependent children. One child, Mark, was 13 years old in 1972. Mark attended public schools through the seventh grade. Because he was failing his classes in public school, petitioners had Mark tested by various psychologists. Testing done by the public school which Mark was attending indicates he had a learning disability that was evidenced by difficulty with relationships and organizational ability, poor handwriting and poor achievement test scores. Following the testing done by the public school's psychologist, petitioners consulted a clinical psychologist, Cullen J. Mancuso, Ph.D. Dr. Mancuso studied Mark and tests performed on Mark, and concluded that Mark exhibited symptoms of hyperactivity, short attention span, perceptual motor dysfunction, distractibility, organizational disabilities and *327 learning disabilities. These symptoms led to a diagnosis of organic brain lesions or syndrome and minimal brain dysfunction. Brain lesions in turn created a learning disability in Mark even though his I.Q. was well above average. Learning disabilities in an otherwise normal child can create psychological and emotional problems because the child, although bright and perceptive, has a great deal of difficulty in competing with other children. Invariably a child with learning disabilities compares himself unfavorably with other children. Because Mark was having trouble in public school as a result of his learning disabilities, Dr. Mancuso prescribed that Mark withdraw from public school and attend Holland Hall School. Dr. Mancuso felt that Holland Hall School, because of its smaller classes (averaging approximately 9 students per class), could give Mark more individual attention and individualized training. As a result, for the school years 1971-1972, and 1972-1973, Mark was enrolled in Holland Hall School in Tulsa. In the first of these two years, Mark repeated seventh grade. Holland Hall School is similar to many private schools. It has a low student teacher ratio, and a *328 curriculum that includes English, algebra, history, science, foreign languages as well as art, music and competitive sports. During his two years at Holland Hall School, Mark studied English, mathematics, history, science, latin, art, music, and economic and political science. During his first year at Holland Hall School, Mark's grades indicate he performed satisfactorily. During his second year at the school he was unable to complete two courses and his grades in other courses were inconsistent. Although Mark enrolled in Holland Hall's Upper School, he later withdrew and returned to public school. Holland Hall School had no special program designed for students with learning disabilities, there are no psychologists or psychiatrists on its staff, and the school provides no medical services to its students. While Mark attended Holland Hall some other students with learning disabilities also attended the school. Of the entire student body, however, less than 5 percent of the students had learning disabilities. This figure was comparable with the percentage of students attending public schools who had learning disabilities. The headmaster of Holland Hall's Middle School, Thompson *329 Freeman, did not consider Holland Hall a special school for children with learing disabilities. He noted that during Mark's attendance at the school Mark only studied courses that were part of a normal curriculum; a curriculum designed to prepare students for college. On their Federal income tax return for 1972, petitioners deducted as a medical expense the following amounts: Holland Hall School
$1,434.00
Transportation to Holland
Hall, 1-1-72 to 5-30-72
38.00
Bus transportation to Holland
Hall School 9-1-72 to 12-31-72
90.00
Total:
$1,562.00
The parties have now stipulated, however, that petitioners incurred and paid $1,023 in tuition and transportation expenses so that Mark could attend private school during the calendar year 1972. Respondent disallowed petitioners' deduction of Mark's tuition and transportation costs resulting in a $663.08 deficiency in petitioners' 1972 income taxes. OPINION The only issue we must decide is whether the expenses incurred by petitioners in sending their son Mark to a private school were deductible medical expenses. Section *330 213(a)[1] allows a deduction for "medical care" expenses that are paid during a taxable year to the extent those expenses are unreimbursed and exceed 3 percent of the taxpayer's adjusted gross income. "Medical care" includes "the diagnosis, cure, mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure or function of the body." Expenses incurred "for transportation primarily for and essential to medical care * * *" are also considered medical care expenses. Sec. 213(e). Although school tuition for a dependent may be deductible as a medical expense, it must satisfy the requirements of section 1.213-1 (e)(1)(v)(a), Income Tax regs.: [2]
While ordinary education is not medical care, the cost of medical care includes the cost of attending a special school for a mentally or physically handicapped individual, if his condition is such that the resources of the institution for alleviating such mental or physical handicap are a principal reason for his presence there. In such a case, the cost of attending such a special school *331 will include the cost of meals and lodging, if supplied, and the cost of ordinary education furnished which is incidental to the special services furnished by the school. Thus, the cost of medical care includes the cost of attending a special school designed to compensate for or overcome a physical handicap, in order to qualify the individual for future normal education or for normal living, such as a school for the teaching of braille or lip reading. Similarly, the cost of care and supervision, or of treatment and training, of a mentally retraded or physically handicapped individual at an institution is within the meaning of the term "medical care." [Emphasis added.] Therefore, *332 in order for Mark's education expenses to qualify as deductible medical expenses, it must be shown that Holland Hall School was a "special school" as provided by the regulations. Greisdorf v. Commissioner, 54 T.C. 1684, 1689 (1970). [3]
Although Mark's emotional health apparently improved during his first year at Holland Hall School, we do not believe it was because Holland Hall was a special school or because Mark received special care. While Mark attended Holland Hall, it had no psychologists or psychiatrists on its staff, and as its headmaster noted, it provided no medical care of any sort. Furthermore, the school administration did *333 not hold the school out to be a special school or consider the school a special school. School curriculum, including the courses Mark studied, was the normal college preparatory curriculum. The student body itself reflected the nature of the school. Less than five percent of the students had learning disabilities, a figure comparable to the percentage of students in public schools with learning disabilities. In view of these facts we are unable to conclude Holland Hall was a special school. Our conclusion is reinforced by Mark's performance at Holland Hall. Although Mark's condition improved during his first year at Holland Hall this improvement seems unrelated to any special care or treatment he received from the school. In fact, his improved grades during the first year may have merely been a consequence of repeating the seventh grade. Upon entering the eighth grade, Mark's grades became less consistent and he eventually dropped two courses. Finally he was unable to complete his education at Holland Hall and he reentered public school. We simply do not believe that a special school, designed to treat students with learning disabilities, would drop a student from its rolls because *334 the child's learning disabilities made him incapable of competing with ordinary students. Yet, this is precisely what petitioners would have us believe. In sum, we conclude Holland Hall was not a special school. Accordingly, petitioners may not deduct either the transportation or the tuition expenses they incurred in sending Mark to that school. Decision will be entered for the respondent. Footnotes
1. Statutory references are to the Internal Revenue Code of 1954, as amended. ↩
2. Petitioners contend the principal reason Mark attended Holland Hall was for medical reasons. They make no attempt to suggest that only a part of Mark's expenses related to his medical problems. Therefore, we need not discuss sec. 1.213-1(e)(1)(v)(b), Income Tax Regs., which provides for the ded0ction of part↩ of the costs incurred in sending a dependent to a particular school.
3. There is no disagreement between the parties that Mark suffered from learning disabilities caused by organic brain lesions, that he lacked organizational abilities and had poor achievement test scores. There is also no disagreement that Mark's learning disabilities resulted in frustration and emotional disturbances. Care and treatment of emotional problems can of course qualify as medical care. Ripple v. Commissioner, 54 T.C. 1442 (1970), Fischer v. Commissioner, 50 T.C. 164↩ (1968).