HARRY J. VANKIRK and MARIA J. VANKIRK, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Van Kirk v. Commissioner
Docket No. 4096-78.
United States Tax Court
T.C. Memo 1980-572; 1980 Tax Ct. Memo LEXIS 1; 41 T.C.M. (CCH) 615; T.C.M. (RIA) 80572; December 30, 1980
*1 Ps' minor son, M, had emotional and learning problems which hindered his achievement in the public schools. With a doctor's approval, Ps sent M to a private school for boys with learning disabilities. There, M received disciplined and personalized teaching in classes which were limited to 4 students, but he received no medical or psychological therapy.Held, the private school was not a "special school" under sec. 1.213-1(e)(1)(v)(a), Income Tax Regs., since the ordinary education provided by it was not incidental to medical care, and therefore, the payments to the school are not deductible as medical expenses under sec. 213, I.R.C. 1954. Harry J. VanKirk and Maria J. VanKirk, pro se. Donald T. Rocen, for the respondent. SIMPSON
MEMORANDUM FINDINGS OF FACT AND *2 OPINION SIMPSON, Judge: The Commissioner determined a deficiency of $ 2,023.66 in the petitioners' Federal income tax for 1974. Several issues have been conceded, and the sole remaining issue is whether the amounts paid by the petitioners to enable their son to attend a private school for boys with learning disabilities were medical expenses under section 213 of the Internal Revenue Code of 1954. FINDINGS OF FACT Some of the facts were stipulated, and those facts are so found. The Petitioners, Harry J. and Maria J. VanKirk, husband, and wife, maintained that legal residence in Arvada, Colo., when they filed their petition in this case. They filed their joint Federal income tax return for 1974 with the Internal Revenue Service at Holtsville, N.Y.
The petitioners have a son, Michael, who was born in 1961. In elementary school, Michael was a marginal student despite having above average intelligence. He experienced a variety of emotional and mental problems. He was hyperactive; he had great difficulty in following simple directions and had a poor attention span; he was slow in learning simple motor skills, such as tieing his shoes; and he was *3 mildly dyslexic. Michael's inability to excel frustrated him; he tended to withdraw socially, and at times, he would cry, become nervous and anxious, or even pull on his hair. Mrs. VanKirk is a school psychologist, and when Michael was in the seventh grade, the petitioners concluded that he required special schooling. They took him to a neurologist for an examination, and in a letter dated January 2, 1974, the doctor concluded that Michael's hyperactivity, motor uncoordination, and learning difficulties were evidence of mild brain damage, and he concurred in the petitioners' plan to send Michael to a "small highly structured private school." Thus, the petitioners enrolled Michael in the Garland School in Chester, N.J.
The Garland School was a well regarded special preparatory school for boys who were underachievers or who had learning disabilities such as dyslexia or minimal brain damage. The school was residential and had about 60 students. Its program was designed to afford its students personal, intensive attention to help them learn despite their disabilities. The content of the courses at the Garland School was the same as that in the public schools, but the teaching *4 methods diverged. At Garland, the student-to-teacher ratio was only 4-to-1, so that each student received much personal attention. The classes were limited to four students and were kept quiet and formal, in order to minimize distractions. At night, the boys were required to study quietly for 2 hours. During those hours, no radios or other distractions were permitted, and the teachers were present to help students who had problems. Garland did not employ a psychologist, neurologist, or other doctor. Nor did it provide any type of formal therapy for its students. However, it did employ specialists certified in teaching math and reading to children with learning disabilities. In April 1974, after Michael had been at Garland for about 3 months, the petitioners withdrew him from the school for reasons unrelated to the school, educational program. In 1974, the petitioners paid $ 6,500 in connection with Michael's attendance at the school, including payments for tuition, room and board, and miscellaneous expenses. On their Federal income tax return for 1974, the petitioners deducted $ 3,229 of such expenses as a medical expense. In his notice of deficiency, the Commissioner *5 disallowed the deduction. At trial, by oral motion, the petitioners amended their petition to claim an overpayment for the remainder of the $ 6,500 paid for Michael's attendance at Garland. OPINION Section 213 allows a deduction for expenses incurred for medical care of the taxpayer, his spouse, and his dependents to the extent such expenses exceed 3 percent of the adjusted gross income of the taxpayer. Section 213(e)(1) defines medical care as amounts paid-- (A) for the diagnosis, cure, mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure or function of the body, Medical care is further defined by section 1.213-1(e)(1)(v)(a), Income Tax Regs., which provides in part: While ordinary education is not medical care, the cost of medical care includes the cost of attending a special school for a mentally or physically handicapped individual, if his condition is such that the resources of the institution for alleviating such mental or physical handicap are a principal reason for his presence there. In such a case, the cost of attending *6 such a special school will include the cost of meals and lodging, if supplied, and the cost of ordinary education furnished which is incidental to the special services furnished by the school. * * * [Emphasis added.] The only issue to be decided is whether the amounts paid by the petitioners to send their son to the Garland School were expenses for medical care under this provision of the regulations. The courts have consistently followed and applied section 1.213-1(e)(1)(v)(a) for purposes of determining when educational expenses constitute medical care within the meaning of section 213(e)(1). We have construed the regulation to mean that a school is a special school only if the ordinary education it provides is incidental to medical care. E.g., Pfeifer v. Commissioner,     F. 2d     (10th Cir. 1979, 79-2 U.S.T.C. par. 9518), affg. per curiam a Memorandum Opinion of this Court; Martin v. Commissioner,548 F. 2d 633 (6th Cir. 1977), affg. per curiam a Memorandum Opinion of this Court; Ripple v. Commissioner,54 T.C. 1442 (1970); *7 Fischer v. Commissioner,50 T.C. 164 (1968); Atkinson v. Commissioner,44 T.C. 39 (1965); see also Greisdorf v. Commissioner,54 T.C. 1684 (1970). Fischer is very similar to this case. There, the taxpayers' son possessed normal intelligence but had several emotional and mental problems, such as poor concentration, hyperactivity, immaturity, and anxiety, which hindered his ability to learn. On a doctor's recommendation, the taxpayers sent him to a school like the Garland School, a private school for boys of normal intelligence who had learning disabilities. The school offered an ordinary curriculum; but it was highly structured, and its students closely watched. In addition, unlike the Garland School, the school provided daily psychotherapy. Nevertheless, we held that the ordinary education provided by the school was not incidental to medical care and that, therefore, the school was not a special school within the meaning of the regulations. 50 T.C. at 175. Atkinson also is similar. There, the taxpayers' son had numerous behavioral problems which made him a poor student. On a doctor's recommendation, *8 the taxpayers enrolled him in a military school where, it was hoped, his problems would be controlled or overcome through discipline. The school offered no medical or psychological therapy. As in Fischer, we held that the school was not a special school within the meaning of the regulations; rather, it was "a private boarding school for young boys where education and discipline are the primary and only resources. The ordinary education offered is not merely 'incidental.'" 44 T.C. at 53. We also stated that the mere fact that the discipline provided by the school was beneficial did not mean that the school was providing medical care. 44 T.C. at 54. The petitioners cite Greisdorf v. Commissioner,supra. In that case, the taxpayers' daughter had been traumatized by the divorce of her natural parents and the subsequent suicide of her natural father. In school, she did not pay attention, did no work, and regularly threw tantrums and vomited. On a psychiatrist's recommendation, the taxpayers (her natural mother and her stepfather) enrolled her in a private school for children with psychological learning disabilities. The school had *9 psychologists on the staff and psychiatrists as consultants, and the taxpayers' daughter received an hour of therapy each day. In addition, her educational program was tailored to supplement for formal therapy received by her. Distinguishing Fischer, we held that the school was a special school under the regulations since, "while educational benefits may have been incidentally obtained by * * * [the school's] students, their attendance at the school was prompted by their mental handicaps and had principally a therapeutic value." 54 T.C. at 1690. Because of his learning disabilities, Michael required special education, and to secure that education for him, the petitioners made large expenditures which would not have been required to send him to the public schools. Yet, we must decide whether those expenditures were for medical care within the meaning of section 213(e)(1), section 1.213-1(e)(1)(v)(a) of the regulations, and the cases decided thereunder, and it is clear that Fischer and Atkinson control this case.Unlike the taxpayers' daughter in Greisdorf, the petitioners' son received from the Garland School nothing more than structured and disciplined *10 ordinary education. He received no therapy, and the school employed no psychologists or psychiatrists. The structured environment may well have helped Michael to learn, but as we said in Atkinson, the existence of such a beneficial effect does not mean that the Garland School was providing medical care. As in Atkinson, the only resources at the Garland School were discipline and education; we cannot find that the education was "incidental" to medical care. To reflect concessions by the parties, Decision will be entered under Rule 155.