LAWRENCE F. FAY AND MARY M. FAY, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 883–78.     Filed February 26, 1981.

*Lawrence F. Fay*, pro se.
*John E. Becker, Jr.*, for the respondent.

DRENNEN, *Judge*: Respondent determined deficiencies in petitioners' income tax for 1975 in the amount of $3,244.26. Due to concessions by the parties, the only issue for decision is whether the tuition paid by petitioners in 1975 for the attendance of two

of their children at Whitby School, or any part thereof, is deductible by them as medical expense.

## FINDINGS OF FACT

The stipulated facts are so found.

Petitioners, husband and wife, were residents of Bedford, N.Y., when their petition herein was filed. They delinquently filed a joint income tax return for the year 1975 with the Internal Revenue Service. Income was reported on the cash basis method of accounting.

Petitioner Lawrence F. Fay is an attorney with offices in White Plains, N.Y. At the time of trial, petitioners had four adopted children ranging in age from 10 to 20 years old, including Jennifer, age 13, and Kevin, age 18. Jennifer was 9 and Kevin was 14 years old in the year 1975.

During the school year 1972–73, Jennifer and Kevin attended a parochial school where nominal or no tuition was paid. Jennifer was in the first grade and Kevin was in the sixth grade. During that school year, both Jennifer and Kevin were diagnosed as having learning disabilities, particularly in the area of language arts. They had reading and writing problems which led to underachievement and some emotional disorders. Petitioners were notified of this fact by their teachers. The petitioners consulted a pediatrician who referred them to a Mr. and Mrs. Weiss who were educators recognized as specialists in learning disabilities. Mr. and Mrs. Weiss recommended that Jennifer and Kevin be enrolled at Whitby School, a nearby private school which had a program for children with learning disabilities.

After consultations with experts and futile attempts to persuade the public school system to begin special programs to help petitioner's children and others with similar problems, and after consulting a psychiatrist, petitioners enrolled both Jennifer and Kevin in Whitby School in September of 1973. The reason petitioners enrolled the children in Whitby was their learning disabilities and the special program Whitby had for dealing with such disabilities hereinafter mentioned. Kevin attended the seventh, eighth, and ninth grades at Whitby, and Jennifer was still attending the school at the time of the trial. Petitioners' other two children attended parochial schools and never attended a private school.

Whitby School is a private school which employs the Montesso-

ri method and offers a regular academic curriculum supplemented by a special program for children with learning disabilities, referred to as the department of language development (DLD) program. The Montessori method recognizes that children learn in different ways and at their own pace; that they can best be educated on an individualized basis with materials designed specifically for the needs of the individual children so far as practical; and it relies on self-motivation rather than competition to promote learning. During 1975, Whitby School had a nonrestrictive admissions policy. None of its staff was medically trained except for a nurse who was supplied by the State of Connecticut.

The department of language development program at Whitby was a special program for children who had learning disabilities beyond those that could be managed in a regular Montessori program. It was designed to provide remedial education in language training and elementary mathematics for children with learning disabilities, described in the school's literature as "children with average to superior intelligence who for a variety, and sometimes a combination, of neurological, emotional and sensory reasons are incapable of learning in a normal way and at a normal pace." Its program and its objectives were closely coordinated with the total school program. Students in the DLD program spent from 1 to 3 hours of their school day in the special program and the remainder of the 5½-hour school day in the regular school program.

The staff for the DLD program were educators who were specially trained to work with learning disabled children. Classes were small, ranging from a maximum of 5 children to individual tutoring. Prior to admission to the program, each child received a psychological and educational evaluation, but there were no psychologists or psychiatrists on the staff. Psychiatric consultants were available but for an additional fee.

A special fee, in addition to the regular tuition, was charged for those attending Whitby School and enrolled in the DLD program. Both Jennifer and Kevin were enrolled in the DLD program in 1975. About 15 percent of the students attending Whitby School were enrolled in the DLD program. In 1975, petitioners paid $5,115.45 to Whitby for regular tuition for

Jennifer and Kevin and paid an additional $1,800 for their enrollment and participation in the DLD program.[1] Petitioners claimed the entire $6,915.45[2] as a deduction for medical expense on their 1975 return. Respondent disallowed that entire amount in the notice of deficiency.

## OPINION

The primary issue for decision is whether the amounts paid by petitioners for enrollment of their two children in the Whitby School is deductible as a medical expense under section 213, I.R.C. 1954. A secondary issue is, if the first issue is answered in the negative, whether that portion of the amount paid which was a special fee for enrollment of the children in the department of language development program qualifies as a payment for medical care and is deductible.

Section 213(a) allows a deduction, within certain limitations, of amounts paid for medical care. Section 213(a) defines "medical care" as amounts paid for the diagnosis, cure, mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure or function of the body, for transportation primarily for and essential to medical care, and for insurance covering medical care.

Section 1.213–1(e)(1)(v)(a) and (b), Income Tax Regs., provides:

(a) Where an individual is in an institution because his condition is such that the availability of medical care * * * in such institution is a principal reason for his presence there, and meals and lodging are furnished as a necessary incident to such care, the entire cost of medical care and meals and lodging at the institution * * * shall constitute an expense for medical care. * * * While ordinary education is not medical care, the cost of medical care includes the cost of attending a special school for a mentally or physically handicapped individual, if his condition is such that the resources of the institution for alleviating such mental or physical handicap are a principal reason for his presence there. In such a case, the cost of attending such a special school will include the cost of meals and lodging, if supplied, and the cost of ordinary

---

[1] The cost of the DLD program for the entire school year was $2,465, but petitioners paid the balance of $645 in 1976.

[2] Additional amounts were claimed as medical expense on the return, but those amounts have been agreed upon and the parties agree that the amount involved in the issue for decision is the sum of the two amounts mentioned above.

education furnished which is incidental to the special services furnished by the school. * * *

(b) Where an individual is in an institution and his condition is such that the availability of medical care in such institution is not a principal reason for his presence there, only that part of the cost of care in the institution as is attributable to medical care * * * shall be considered as a cost of medical care. * * *

Section 1.213–1(e)(ii), Income Tax Regs., also states:

Deductions for * * * medical care allowable under section 213 will be confined strictly to expenses incurred primarily for the prevention or alleviation of a physical or mental defect. * * *

The courts have recognized that mental and emotional disorders resulting in learning disability can be considered a disease. *Fischer v. Commissioner*, 50 T.C. 164 (1968); *Ripple v. Commissioner*, 54 T.C. 1442 (1970); *Hendrick v. Commissioner*, 35 T.C. 1223 (1961).[3] Also that the cost of educational services rendered to the mentally handicapped or diseased can qualify as medical expense. *Fischer v. Commissioner, supra*; *Greisdorf v. Commissioner*, 54 T.C. 1684 (1970). Whether a service for which an expenditure is made constitutes medical care will depend upon its therapeutic nature to the individual, and not upon the title of the person rendering the service or the general nature of the institution in which the services are rendered. *Fischer v. Commissioner, supra*; *Grunwald v. Commissioner*, 51 T.C. 108 (1968). But to qualify as a medical deduction, it must be shown that the individual to whom the services were rendered was afflicted with a mental disease or defect and that the services received, directly or proximately related to the mitigation, alleviation, or treatment of the disease or defect. *Jacobs v. Commissioner*, 62 T.C. 813 (1974).

If a mentally disturbed individual with learning disabilities is sent to an educational institution which also has resources for treating the mental handicap, and if the principal reason for his attendance at the institution is for the use of those resources to alleviate or mitigate the mental handicap, and if the institution's educational program is only incidental to its medical care function, the school will be considered a "special school" within the meaning of the regulations, and the expenditures for meals

---

[3]See also *Sims v. Commissioner*, T.C. Memo. 1979–499.

and lodging and ordinary educational services will be deductible. However, if the medical care offered at an educational institution is not a principal reason for attendance there, then the institution will not qualify as a "special school" and only the costs of medical services rendered are deductible; meals and lodging and ordinary educational services are not deductible. *Greisdorf v. Commissioner, supra.* An educational institution does not have to qualify as a "special school" in order for the cost of the medical services rendered to be deductible; if the cost of the medical care can be ascertained, it is deductible. On the other hand, if the cost of medical service is simply an integrated part of the overall cost of the educational program, it is not deductible. *Ripple v. Commissioner, supra.*[4]

We must examine the facts in this case in the light of the foregoing framework of the law as formulated by the regulations and courts in interpreting and applying section 213. Petitioners paid regular tuition in the total amount of $5,115.45 in 1975 for the attendance of their two children at Whitby School; they also paid an additional $1,800 in 1975 for enrollment of the two children in the DLD special program.

Initially, we think it is clear that Whitby School does not qualify as a "special school" within the meaning of the regulations, whether we look at it from the viewpoint of the school itself or from the viewpoint of petitioners and their children. See *Sims v. Commissioner,* T.C. Memo. 1979–499. As a school, Whitby's primary raison d'etre was to provide an educational program for its students using the Montessori method. The DLD program was supplemental and incidental to its educational program, and it has been held that a Montessori-type school does not qualify as a "special school." *Fischer v. Commissioner, supra* at 175; compare *Greisdorf v. Commissioner, supra.* From the viewpoint of petitioners and their children, Whitby School's resources for alleviating or treating the children's mental handicap may have been one of the reasons for their presence at the school, but the educational services provided were certainly not rendered only as an incident to providing medical care. The DLD program was coordinated and integrated with the regular academic program of the school, and Jennifer and Kevin spent

---

[4]See also *Pfeifer v. Commissioner,* T.C. Memo. 1978–189; *Reiff v. Commissioner,* T.C. Memo. 1974–20.

at least half, and probably more, of their normal school day in the regular classes. The regular tuition exceeded the cost of the DLD program. The DLD program was designed to alleviate their mental problems so they could participate in the regular school program, and the purpose of that was to give them an education.

Since Whitby School does not qualify as a "special school," the tuition paid for enrollment in the regular school does not qualify as a medical expense and is not deductible. See also *Hendrick v. Commissioner, supra; Estate of Baer v. Commissioner,* T.C. Memo. 1967-34.

However, whether the $1,800 paid for the children's participation in the DLD program is deductible as a medical expense must be viewed from a different perspective. If the DLD program qualifies as medical care, the cost thereof is deductible even though Whitby School is not a "special school." *Fischer v. Commissioner, supra; Lichterman v. Commissioner,* 37 T.C. 586 (1961); *Hendrick v. Commissioner, supra.*

As previously noted, expenditures for the allocation or treatment of mental defects or illnesses are deductible. To qualify this particular expenditure for a medical deduction, petitioners must show that Jennifer and Kevin were afflicted with a mental disease or defect and that the services received were proximately related to the disease or defect. This will depend primarily on the therapeutic nature of the DLD program to Jennifer and Kevin. We conclude that the expenditures made by petitioners for enrollment of the two children in the DLD program qualify as medical expenses.

While the record is not too clear with respect to the precise nature of the mental conditions of Jennifer and Kevin, we are satisfied that they both suffered from some sort of learning disability, accompanied by emotional stress, which prevented, or at least interfered with, their ability to cope in a normal academic environment. While this condition may or may not have been psychiatric, it was certainly a mental handicap or defect which we think may be considered a mental disease or defect for purposes of section 213. It was the type of disorder that the petitioners, their expert educational consultants, a psychiatrist, and the staff of the DLD program thought could be mitigated or alleviated, or possibly cured, by the special attention and individual programing given to the children at the

DLD. While these mental disorders may not have been severe enough to require psychiatric or psychological treatment, they were severe enough to prevent the children from acquiring a normal education without some help, and we think any treatment, whether rendered by medical people or specially trained educators, directly related to the alleviation of such mental disorders so that the recipient may obtain a normal, or more normal, education, qualifies as medical care under the statute.

We are also convinced that the services rendered to Jennifer and Kevin by the DLD program directly or proximately related to the mitigation or treatment of the mental defects or handicaps suffered by Jennifer and Kevin. They spent 1 to 3 hours of their school day under the guidance of the DLD staff. While the staff were not medically trained, they were all educators specializing in the field of learning disabilities. The classes were small and each student received individual attention and treatment. Based on the observations of these specialists, the curriculum of each student was tailored to fit his particular needs. The staff members coordinated the programs designed for the individual students with the teachers of the classes in the regular school program attended by those students. We have little specific evidence of the therapeutic value of these services to Jennifer and Kevin, but we do know that Jennifer's general reaction to learning improved and she was still attending Whitby School in 1979 and the DLD program through 1975 at least, and that Kevin stayed in the school and program through the seventh, eighth, and ninth grades.

The circumstances in this case are somewhat different from those in most of the other cases which involved this issue. In some of those cases, the institution rendering the services was established and operated primarily for medical purposes and accepted only handicapped children, with education being only an incidental part of the overall program. In others, the institutions were entirely academic, with tutoring or counseling services being rendered without additional fees only when needed. Whitby School was primarily an educational institution, but it had a separate and distinct supplemental program for aiding students with learning disabilities, and a rather sizeable additional fee was charged for attending that program. The additional fee paid by petitioners was not paid for the privilege of having their children attend a private school or a Montessori

school. Petitioners paid the regular tuition for that purpose, and paid the additional DLD fee for something separate and different. The additional fee was paid for services that would alleviate or mitigate the mental problems their children had which prevented them from progressing in a normal educational environment. We think the additional fee paid by petitioners in 1975 qualifies as a medical expense and we so hold.

Petitioners have conceded that the negligence addition to tax is applicable to any additional tax that is determined to have been due on April 15, 1976.

*Decision will be entered under Rule 155.*