BRUCE S. WALTON and MARY K. WALTON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Walton v. Commissioner
Docket No. 16210-80.
United States Tax Court
T.C. Memo 1982-648; 1982 Tax Ct. Memo LEXIS 106; 45 T.C.M. (CCH) 65; T.C.M. (RIA) 82648; November 8, 1982. *106 Held, costs of sending dependent child to a private school and for a tutor are not deductible under sec. 213, I.R.C. 1954. Bruce S. Walton and Mary K. Walton, pro se. Joyce H. Errecart, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: This case was assigned to and heard by Special Trial Judge Francis J. Cantrel pursuant to the provisions of section 7456(c), [1] Internal Revenue Code of 1954, as amended and General Order No. 6 of this Court, 69 T.C. XV. [2] After a review of the record, we agree with and adopt his opinion which is set forth below. *107 OPINION OF THE SPECIAL TRIAL JUDGE CANTREL, Special Trial Judge: Respondent determined a deficiency in petitioners' Federal income tax for the taxable calendar year 1977 in the amount of $6,272.78. The sole issue for decision is whether amounts paid to a private tutor and a private school constitute expenses paid for medical care under section 213. [3]
FINDINGS OF FACT Some of the facts have been stipulated by the parties. The stipulations of facts and attached exhibits are incorporated herein by reference. Petitioners resided at 2721 Oldewood Drive, Falls Church, Virginia on the date their petition was filed. They filed a joint original 1977 Federal income tax return and a joint amended 1977 Federal income tax return with the Internal Revenue Service. Petitioners' daughter, Marjory, who had a history of difficulty with academic achievement in public and parochial schools, was born on December 27, 1958. She attended first and second grade at St. James School (St. James), a private parochial school situate at Falls Church, Virginia. *108 In September 1966 Marjory underwent a psychological evaluation given by the Fairfax County, Virginia Health Department. As a result thereof it was determined that Marjory had a mental age 13 months younger than her chronological age and it was recommended that she be put on a list for special education classes. Marjory repeated the second grade and attended third through sixth grades in public schools in Fairfax County, Virginia. Petitioners determined that there was a permissive environment pervading the public schools and returned Marjory to St. James for the seventh and eighth grades. Since she experienced a number of academic difficulties at St. James, Marjory entered ninth grade at Falls Church High School in Virginia where she remained for six weeks at which time she stopped attending school. In April of 1975 Marjory resumed ninth grade classes at George Marshall High School (George Marshall), a public high school located in Fairfax County, Virginia, where she completed the ninth grade. The requested and approved public school change was for the purpose of giving Marjory a new start to salvage something from a school year which would otherwise have been a total loss. Additionally, *109 she would have new teachers, a new peer group and she would be near her older brother. In the first semester of tenth grade, Marjory took several courses under the auspices of Immaculate Conception Academy, a private parochial school. In December of 1975 Marjory was tested by an assistant professor of the Special Education Department at George Washington University at Washington, D.C. A full informal diagnostic interview with specific focus on reading was performed. The results showed Marjory to be within the normal range of intelligence but functioning approximately 2 years below her chronological age in performance. Due to her low regard for her academic ability and her dyslexia the results further disclosed that Marjory required an intensely supportive educational environment with great individualization of her academic program. Marjory met with a psychiatrist, Dr. Helen Ossofsky, for approximately one hour each week from January of 1976 until June of 1978. On March 30, 1976, Marjory underwent testing at the George Washington University Reading Center (Reading Center). The findings revealed that she was reading at approximately the eighth grade level and it was recommended *110 that she take a short, intensive course in reading techniques, emphasizing advanced decoding, speeded reading, and study skills. [4] Marjory attended a clinic at the Reading Center Approximately 15 hours each week from April of 1976 through the middle of June 1976.Marjory's reading skills improved as a result of attending the clinic. Marjory re-entered George Marshall in April of 1976 and completed the tenth grade there. On August 17, 1976, the Department of Special Services for the Fairfax County Public Schools declared Marjory eligible for service within the emotionally disturbed program, the tuition for which is provided by the school system. Marjory was accepted for admission at the Devereux Foundation, a private school approved by the school system for emotionally disturbed students. Marjory did not attend Devereux as petitioners feared it was not the right place for her and if she were to go there she would suffer a much deeper depression.Marjory was approved for, accepted and attended Glaydin School, a private school located in Leesburg, *111 Virginia, which qualified under the school system's program for emotionally disturbed children, for about 6 weeks in September and October of 1976. She voluntarily left that school because of the heavy drug culture there upon which the major emphasis was placed. [5]
On February 4, 1977, Marjory began attending the Emerson Preparatory School (Emerson), a private school in Washington, D.C. Emerson, founded in 1852, originally prepared Washington boys exclusively for entrance to Harvard. After the Civil War Emerson broadened its program to prepare young men for all of the Eastern Colleges including the Military and Naval Academies. Its educational program is designed to prepare its coeducational and cosmopolitan student body for entrance to colleges and universities all over the world. The small class size and low student-teacher ratio makes it necessary to register early to ensure enrollment in all desired subjects. Emerson does not consider itself to be a school for students with handicaps. Marjory took academic *112 and remedial education courses while at Emerson, for example, reading improvement study skills, spelling, vocabulary, general math, history and typing. She did not receive any professional psychological services at Emerson and none of her teachers held credentials in psychological or medical fields. Marjory's psychiatrist, Dr. Ossofsky, communicated to her teachers Marjory's need for success. Emerson is not a school approved by the Fairfax County school system for its program for emotionally disturbed students. Its brochure advertises only high school and college preparatory programs, secretarial courses and English for foreign students. It does not advertise any programs for reading disabilities or emotionally disturbed students. Emerson offered Marjory and opportunity to be herself, to believe in herself, and to achieve the academic excellence of which she is capable. She thrived at Emerson, where the classes were small, averaging 8 to 12 students; the student body totals less than 100 in any given term; and there is a constant opportunity for meaningful rapport between students and their teachers. She became an exemplary student, rarely absent from class, conscientious *113 in performing her assignments and class work, and even in participating in class discussion. In general, she soon became an all-around, better-than-average student. Her grades improved from the C's and D's of her public school years to consistent A's and B's, grades which are a truer measure of Marjory's academic potential. On June 24, 1977, based on its review of psychological and educational evaluations, the Fairfax County Public School system recommended that Marjory be dismissed from its emotionally disturbed program and returned to regular class placement at her base school. During 1977 petitioners paid Emerson $1,541 for tuition. Marjory completed her studies at Emerson in January 1978 and received her high school diploma with her class in June 1978. At the time of trial Marjory was a junior in college, specializing in learning disability education, and doing excellently. From October of 1976 through the beginning of February 1977, Marjory was tutored in reading and math by a private tutor, Ms. Susan Berman, an ex-teacher who had a reputation as being good with learning handicapped children but no special training.Ms. Berman had a degree in education. [6] Petitioners *114 paid $420 for a private tutor for Marjory during 1977 for which they received no reimbursement from any source. On their 1977 return petitioners claimed a medical deduction of $7,237.09, of which respondent has allowed $5,252.00. This leaves a balance of $1,985.09, which includes the $1,541 and $420 herein at dispute. [7]
OPINION Section 213(a) permits a deduction, subject to certain limitations, for amounts paid for the medical care of a taxpayer, his spouse and dependents. "Medical care" means amounts paid for "diagnosis, cure, mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure or function of the body". Section 213(e)(1). Included within the cost of medical care are amounts paid for certain special schooling. Although school tuition for a dependent may be deductible as a medical expense, it must satisfy the requirements of *115 section 1.213-1(e)(1)(v)(a), Income Tax Regs., which recites in pertinent part-- * * * While ordinary education is not medical care, the cost of medical care includes the cost of attending a special school for a mentally or physically handicapped individual, if his condition is such that the resources of the institution for alleviating such mental or physical handicap are a principal reason for his presence there. In such a case, the cost of attending such a special school will include the cost of meals and lodging, if supplied, and the cost of ordinary education furnished which is incidental to the special services furnished by the school. Thus, the cost of medical care includes the cost of attending a special school designed to compensate for or overcome a physical handicap, in order to qualify the individual for future normal education or for normal living, such as a school for the teaching of braille or lip reading. Similarly, the cost of care and supervision, or of treatment and training, of a mentally retarded or physically handicapped individual *116 at an institution is within the meaning of the term "medical care." [Emphasis added.] [8]
Moreover, deductions for medical care allowable under section 213 will be confined strictly to expenses incurred primarily for the prevention or alleviation of a physical or mental defect. Section 1.213-1(e)(ii), Income Tax Regs.
We have recognized that mental and emotional disorders resulting in learning disability can be considered disease and, also, that the cost of educational services rendered to the mentally handicapped or diseased can qualify as a medical expense. Fay v. Commissioner,76 T.C. 408, 412 (1981), and cases cited therein. [9] However, it must be shown that the individual to whom the services were rendered was afflicted with a mental disease or defect and that the services rendered *117 directly or proximately related to the mitigation, alleviation, or treatment of the disease or defect. Jacobs v. Commissioner,62 T.C. 813 (1974).
In our view, before the tuition payments to Emerson may qualify as deductible medical expenses, petitioners must show that Emerson was a "special school" as provided by the regulations. It will be regarded as a "special school" only if it is shown that its resources for alleviating Marjory's learning disabilities were a principal reason for her presence there and if its educational program was only incidental to its medical care function. Greisdorf v. Commissioner,54 T.C. 1684, 1689 (1970). [10]
Emerson does not consider itself to be a school for students *118 with handicaps. Its educational program is designed to prepare its coeducational and cosmopolitan student body for entrance to colleges and universities all over the world. Its brochure advertises only high school and college preparatory programs, secretarial courses and English for foreign students. It does not advertise any programs for reading disabilities or emotionally disturbed students. Marjory took only academic and secretarial courses which are available to all students at Emerson. She did not receive any professional psychological services while at Emerson and none of her teachers held credentials in psychological or medical fields. Indeed, nowhere in this record is there a showing that Emerson provided any "medical care" to Marjory while she was a student there. Emerson is not a school approved by the Fairfax County School System for its program for emotionally disturbed students. The primary purpose of Emerson was to render educational services to its students. It, thus, was not a "special school" within the meaning of the regulations. [11] Petitioners purchased education, not medical care, and education is not deductible. [12]
*119 It may be that some therapeutic benefits resulted from Marjory's attendance at Emerson. However, that fact by itself is not enough to make the services provided by Emerson "medical care" rather than educational. "Although the atmosphere and routine of the school and the association with other children there were beneficial to [petitioners' son who had emotional and psychological problems], we cannot conclude that this constituted the furnishing of medical care by the school within the meaning of the statute and the regulations". Lichterman v. Commissioner,37 T.C. 586, 597 (1961). [13]
The small classes and the structural and academically challenging environment at Emerson and the "normalization" it provided for Marjory without question aided for passage through a trying and troubled period. Petitioners were genuinely concerned about their daughter, and understandably *120 so. We are sure that they regarded Emerson as salvaging a young lady's life. With Marjory's successful adjustment and her continuing praiseworthy academic achievements, we are certain that the tuition was wisely spent by petitioners at a time, perhaps, when they could ill afford the expense. Nonetheless, the tuition expense does not qualify as a deductible medical expense. We finally consider the payments made to a private tutor prior to Marjory's enrollment at Emerson. The record contains little information on this matter. The tutor, who instructed Marjory in reading and math, was an ex-teacher who had a degree in education. She had a reputation as being good with learning handicapped children but no special training. Petitioners have not shown that the services provided by the tutor rose to the level of "medical care". On this record the services appear to be for education only. The burden of proof with respect to this matter is on them. They simply have not met their burden. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and *121 Procedure.
On this record, we must and do hold that petitioners are not entitled to a medical expense deduction for either the tuition payments to Emerson or the payment made to a private tutor. Decision will be entered under Rule 155.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended. ↩
2. Pursuant to General Order No. 6, dated March 8, 1978, the post-trial procedures set forth in Rule 182, Tax Court Rules of Practice and Procedure↩, are not applicable to these proceedings.
3. Due to concessions made by the parties, a decision under Rule 155, Tax Court Rules of Practice and Procedure↩, will be necessary.
4. The Special Education Division for the Fairfax County Public Schools also recommended intensive reading development for Marjory.↩
5. An advisory report from Glaydin School advises that Marjory's attendance and performance in the Reading Development class prior to her absence were excellent.↩
6. The record is silent as to whether Ms. Berman had any other degrees or qualifications to treat or teach children with learning disabilities.↩
7. The record nowhere explains the discrepancy of $24.09.↩
8. These regulations have been held to be a reasonable inter-pretation of the statute. Lichterman v. Commissioner,37 T.C. 586, 596↩ (1961).
9. The parties appear to agree that Marjory suffered from learning disabilities, accompanied by emotional stress, which prevented, or at least interfered with her ability to cope in a normal academic environment.↩
10. See Ripple v. Commissioner,54 T.C. 1442 (1970), and Pfeifer v. Commissioner,T.C. Memo. 1978-189↩.
11. Petitioners' reliance on Fay v. Commissioner,76 T.C. 408↩ (1981), in support of their position is misplaced. There, the tuition paid for enrollment in the regular school did not qualify as a deductible medical expense. What did qualify was a rather sizeable additional fee paid for a separate and distinct supplemental program for aiding students with learning disabilities. We do not have that situation here. 12. See Barnes v. Commissioner,T.C. Memo. 1978-339, where on a record stronger than we have here, we disallowed payments made to a private military school. See also Coyne v. Commissioner,T.C. Memo. 1982-262↩.
13. Petitioners agree, in their brief, that Marjory was attending Emerson for academic reasons and that the school provided no specialized services for the treatment of mental or physical disorders. Petitioners' other arguments are simply without merit and we will not address them herein.↩