T.C. Summary Opinion 2002-127


UNITED STATES TAX COURT


ROBERT AND MARTHA EMANUEL, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 10609-00S, 13639-01S.    Filed October 3, 2002.


Larry C. Fedro and Cara Pavalock (specially recognized), for petitioners.

Timothy Maher, for respondent.


PANUTHOS, Chief Special Trial Judge:  These cases were heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petitions were filed.  The decisions to be entered are not reviewable by any other court, and this opinion should not be cited as authority.  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for the years in issue, and all

Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined that petitioners are liable for deficiencies in Federal income taxes as follows:

| Year | Deficiency |
|------|-----------|
| 1996 | $2,891 |
| 1997 | 3,851 |
| 1998 | 3,238 |

After concessions,[1] the issues for decision are: (1) Whether petitioners are entitled to deductions for medical expenses, and (2) whether petitioners are entitled to a deduction for a charitable contribution for miles driven in their van.

---

[1] Petitioners conceded respondent's determination that the payments Mrs. Emanuel received in 1996, 1997, and 1998 for attendant care services provided to Mr. Emanuel are includable in gross income. Respondent conceded that petitioners are entitled to deduct as medical expenses $1,265 in 1998 for a modification to their van to accommodate a wheelchair and scooter lift and $300 in 1998 for maintenance of Mr. Emanuel's scooter, and $1,094 in 1997 as a charitable contribution. As a result of the mutual concessions all adjustments in the notices of deficiency either have been resolved or are computational.

Petitioners asserted entitlement to a deduction for expenses for "WC Young", "Quest", "After YMCA", investment fees paid of $223, income tax preparation fees of $240, and income tax planning fees of $900, which were not claimed on the 1998 return. Petitioners did not present any evidence concerning these issues. Accordingly, we deem these issues conceded.

Petitioners assert they are entitled to deduct the following medical expenses that were not claimed on the returns for the years in issue:

| Expense | 1996 | 1997 | 1998 |
|---|---|---|---|
| Attendant care services | [1]$15,834 | $17,616 | $15,474 |
| Van cost | -0- | -0- | 13,214 |
| Gasoline | 865 | 835 | 750 |
| Child attendant care | 1,324 | 1,366 | 1,399 |
| Back-up generator | -0- | -0- | 840 |
| Pool maintenance | 1,200 | 1,200 | 1,200 |
| YMCA tuition | 1,569 | 1,558 | 1,234 |

[1] All amounts have been rounded to a whole dollar figure.

Petitioners resided in Hollywood, Florida, at the time they filed their petitions. Some of the facts have been stipulated and are so found. These two cases were consolidated pursuant to the Court's order of January 15, 2002. For convenience we combine our findings of fact and conclusions.

In the petitions and at trial, petitioners raised the matters at issue here; accordingly, petitioners bear the burden of proof. Rule 142(a)(1).[2]

1. Medical expenses

Petitioners allege they are entitled to various medical expense deductions. We first discuss the requirements of section

[2] Sec. 7491 does not apply to shift the burden of proof to respondent because petitioners have neither alleged that sec. 7491 is applicable nor established that they complied with the requirements of sec. 7491(a)(2)(A) and (B) to substantiate items, maintain required records, and cooperate fully with respondent's reasonable requests.

213 and then consider the particular claims made by petitioners.

Certain expenses paid during the taxable year, not compensated for by insurance or otherwise, for the medical care of the taxpayer or a dependent (as defined in section 152) may be allowed as a deduction to the extent that the expenses exceed 7.5 percent of the taxpayer's adjusted gross income.  Sec. 213(a).  A dependent includes a son more than half of whose support was received from the taxpayer.  Sec. 152(a)(1).

"Medical care" includes amounts paid for the diagnosis, cure, mitigation, treatment, or prevention of disease or for the purpose of affecting any structure or function of the body, under section 213(d)(1)(A), and for transportation primarily for and essential to medical care referred to in subparagraph (A), under section 213(d)(1)(B).  Medical care also includes amounts paid for qualified long-term care services, as defined in section 7702B(c).  Sec. 213(d)(1)(C).  "Qualified long-term care services" means necessary diagnostic, preventative, therapeutic, curing, treating, mitigating, and rehabilitative services, and maintenance or personal care services, which are required by a chronically ill individual and are provided pursuant to a plan of care prescribed by a licensed health care practitioner.  Sec. 7702B(c)(1).  A "chronically ill individual" means any individual who has been certified by a licensed health care practitioner as being unable to perform at least two activities of daily living

(eating, toileting, transferring, bathing, dressing, and continence) for a period of at least 90 days due to a loss of functional capacity, or requires substantial supervision to protect himself from threats to health and safety due to severe cognitive impairment. Sec. 7702B(c)(2). An amount paid for qualified long-term care services that are provided by the spouse or a relative of the individual is treated as not paid for medical care for tax years beginning after December 31, 1996.[3] Sec. 213(d)(11)(A).

Certain amounts paid for lodging that is not lavish or extravagant while away from home and that is primarily for and essential to medical care referred to in paragraph (1)(A) shall be treated as amounts paid for medical care if the medical care is provided by a physician in a licensed hospital or a related or equivalent medical care facility and if there is no significant element of personal pleasure, recreation, or vacation in the travel away from home. Sec. 213(d)(2). The amounts taken into account shall not exceed $50 for each night for each individual. Id. An expenditure which is merely beneficial to the general health of an individual, such as an expenditure for a vacation, is not an expenditure for medical care. Sec. 1.213-1(e)(1)(ii),

---

[3] Congress added sec. 213(d)(11) to the Health Insurance Portability Act of 1996, Pub. L. 104-191, sec. 322(b)(2)(C), 110 Stat. 2061-2062, effective for tax years beginning after Dec. 31, 1996.

Income Tax Regs. Expenses paid for transportation primarily for and essential to the rendition of the medical care are expenses paid for medical care, but the deductible amount does not include the cost of meals and lodging while away from home receiving medical treatment. Sec. 1.213-1(e)(1)(iv), Income Tax Regs.

Deductions for expenditures for medical care allowable under section 213 will be confined strictly to expenses incurred primarily for the prevention or alleviation of a physical or mental defect or illness. Sec. 1.213-1(e)(1)(ii), Income Tax Regs.

Capital expenditures are generally not deductible. Sec. 263; sec. 1.213-1(e)(1)(iii), Income Tax Regs. However, a capital expenditure may qualify as a deductible medical expense if it has as its primary purpose the medical care of the taxpayer or his dependent. Sec. 1.213-1(e)(1)(iii), Income Tax Regs. Expenditures made for the operation or maintenance of a capital asset may be deductible as medical expenses if they have as their primary purpose the medical care, as defined in section 1.213-1(e)(1)(i) and (ii), Income Tax Regs., of the taxpayer or his dependent. Sec. 1.213-1(e)(1)(iii), Income Tax Regs.

A taxpayer is generally required to keep sufficient records to enable the Secretary to determine the taxpayer's correct income tax liability. Sec. 6001; sec. 1.6001-1(a), Income Tax Regs. In addition, the taxpayer shall furnish the name and

address of each person to whom payment for medical expenses was made and the amount and date of the payment thereof in each case in connection with claims for deductions under section 213. Sec. 1.213-1(h), Income Tax Regs.

The cost of educational services rendered to the mentally handicapped can qualify as a medical expense. Fay v. Commissioner, 76 T.C. 408, 412 (1981) (citing Fischer v. Commissioner, 50 T.C. 164 (1968)); sec. 1.213-1(e)(1)(v), Income Tax Regs. Medical care includes the entire cost of institutional care for a person who is mentally ill and unsafe when left alone. Sec. 1.213-1(e)(1)(v), Income Tax Regs. Whether a service constitutes medical care will depend upon its therapeutic nature to the individual, and not upon the title of the person rendering the service or the general nature of the institution in which the services are rendered. Fay v. Commissioner, supra. The services provided must be directly or proximately related to the mitigation, alleviation, or treatment of the individual's disease or disability. Fay v. Commissioner, supra, (citing Jacobs v. Commissioner, 62 T.C. 813 (1974)).

> If a mentally disturbed individual with learning disabilities is sent to an educational institution which also has resources for treating the mental handicap, and if the principal reason for his attendance at the institution is for the use of those resources to alleviate or mitigate the mental handicap, and if the institution's educational program is only incidental to its medical care function, the school will be considered a "special school" [under section 1.213-1(e)(1)(v)(a), Income Tax Regs] * * * [Fay v.

Commissioner, supra at 412.]

The expenditures for the educational services will be deductible. Greisdorf v. Commissioner, 54 T.C. 1684 (1970). If a school or institution does not qualify as a "special school", the costs of medical services rendered are nevertheless deductible. Fay v. Commissioner, supra; sec. 1.213-1(e)(1)(v)(b), Income Tax Regs.

Section 262 prohibits deductions for personal, living, or family expenses.

a. Attendant care provider expense

Mr. Emanuel was injured in 1989 while employed by Eastern Airlines and at the time of the trial was still unable to work. Because of the injuries, Mr. Emanuel was awarded worker's compensation benefits. Mr. Emanuel is unable to walk a distance greater than a hundred feet or to stand for more than a few minutes consecutively and relies on a scooter for mobility. He has also been unable to fully care for himself and has relied on the assistance of Mrs. Emanuel to help him shower, dress, eat, and exercise. In 1993, the Worker's Compensation Court in Miami, Florida, determined that Mr. Emanuel was to receive the additional benefit of attendant care services and selected Mrs. Emanuel as his attendant care provider.

Mrs. Emanuel was paid minimum wage for 10 hours of services provided to Mr. Emanuel each day. The following amounts were

paid to Mrs. Emanuel by Eastern Airline's disability insurance carrier, American International Domestic Brokerage Group (AIG):

| Year | Amount |
|------|--------|
| 1996 | $15,834 |
| 1997 | 17,616 |
| 1998 | 15,474 |

Petitioners maintain that they are entitled to deduct the amounts paid to Mrs. Emanuel as medical expenses.[4]

Section 213 allows the taxpayer to deduct amounts paid for medical expenses. A taxpayer may deduct amounts that the taxpayer has paid for himself (or his dependent), but not amounts that a third party has paid on the taxpayer's behalf. See McDermid v. Commissioner, 54 T.C. 1727 (1970). Because AIG paid Mrs. Emanuel, petitioners cannot deduct as a medical expense the payments received.

Petitioners argue that the funds paid to Mrs. Emanuel belong to Mr. Emanuel and are his to "direct as he sees fit", and that he could have received the funds directly from AIG and paid Mrs. Emanuel himself.[5] Assuming, arguendo, that we were to accept

---

[4] As previously indicated, petitioners now agree that the amounts should have been reported as gross income in their respective income tax returns.

[5] Petitioners also cited a private letter ruling which bears no factual resemblance to this case. In any event, private letter rulings may be helpful but have no precedential force. Rowan Cos., Inc. v. United States, 452 U.S. 247, 261 n.17 (1981); Phi Delta Theta Fraternity v. Commissioner, 887 F.2d 1302, 1308 (6th Cir. 1989), affg. 90 T.C. 1033 (1988).

petitioners' argument, the deduction would nevertheless be disallowed because the payments received for worker's compensation would be considered as compensated for by insurance or otherwise. Sec. 213(a). The deduction would also be disallowed with respect to petitioners' 1997 and 1998 tax years because the amounts paid for the services provided to Mr. Emanuel, which are qualified long-term care services as defined under section 7702B(c), are treated as not paid for medical care because the services were provided by Mr. Emanuel's spouse. Sec. 213(d)(11)(A). Respondent is sustained on this issue.

b. New van

Petitioners replaced their old van with the purchase of a new Chevrolet van in 1998 for $32,000. Petitioners purchased a van, rather than another vehicle, such as an automobile, in order to accommodate Mr. Emanuel's scooter. Petitioners claim that they are entitled to deduct $12,225 as a medical expense which represents approximately the difference between the cost of the new van, at $32,000, and the cost of a new car, such as a Chevrolet Lumina, at $19,775.[6]

---

[6] Petitioners argue that their position is supported by a private letter ruling and two revenue rulings. None of these rulings supports petitioners' position. Revenue rulings do not have the force of law. Lucky Stores, Inc. v. Commissioner, 153 F.3d 964, 966 n.4 (9th Cir. 1998), affg. 107 T.C. 1 (1996), supplemented by T.C. Memo. 1997-70. As indicated, a taxpayer may not rely on a private letter ruling issued to another taxpayer. See supra note 5.

The difference between the cost of petitioners' new van and the cost of a new car is not deductible as an expense because this expense was not incurred for the diagnosis, cure, mitigation, treatment, prevention of disease, or to affect any structure or function of the body, or for transportation primarily for and essential to such medical care of Mr. Emanuel. Sec. 213(a), (d)(1)(A) and (B).  We conclude that petitioners are not entitled to deduct the excess cost of the new van as a medical expense.

c.  <u>Gasoline</u>

Petitioners also claim a medical expense deduction for the cost of the gasoline consumed by both their old van and their new van.  The amount claimed represents the difference between the cost of the gasoline used by the vans and the cost of the gasoline that would otherwise have been consumed by a standard size automobile.

Petitioners estimated the amount of gasoline the new van consumed and the amount which petitioners now claim as a medical expense because they did not keep records of the actual gasoline consumption.  Petitioners estimated that they drove 10,000 miles annually.  They also estimated that the fuel consumption of a car would be 20 miles to a gallon, and the fuel consumption of the vans was 10 miles to the gallon.  Mr. Emanuel explained that he averaged the cost of a premium and regular gasoline to estimate

the cost of the gasoline used.  He testified that he priced the gasoline for 1996, 1997, and 1998 using prices available on a website.  Petitioners provided a written summary of their gasoline expenses but did not provide supporting documentary evidence for the summary.  In addition, the amounts of expenses in the summary are different from the amounts to which Mr. Emanuel testified.

Petitioners did not provide any evidence that they incurred these expenses for the cost of the gasoline in the course of transportation primarily for and essential to medical care.  Sec. 213(d)(1)(B).  In addition, petitioners have not substantiated the amounts claimed under section 1.213-1(h), Income Tax Regs. We conclude that petitioners are not entitled to deduct the cost of gasoline as a medical expense.

d.  <u>Attendant care</u>

Petitioners' son Christopher, who was 20 years old in 1996, is microcephalic and suffers from severe mental retardation and physical problems.  He is unable to wash himself, dress himself, take medication, and perform other basic functions, and he requires constant assistance.  Although petitioners received Social Security payments, "SSI", Medicare, and Mediwaiver on behalf of Christopher, he qualifies as their dependent under section 152(a)(1).

Petitioners took numerous trips to entertainment parks. Petitioners traveled to Walt Disney World and the Universal Studios Florida a total of four times during 1996, 1997, and 1998. Petitioners assert that the trips were therapeutic for Christopher, and also for family vacations. An attendant care provider traveled with petitioners to assist with the care of Christopher. The care provider performed many services including dressing Christopher, pushing his wheelchair, and accompanying him on amusement rides.

Petitioners argue that they are entitled to deduct as medical expenses for their dependent certain costs incurred on behalf of the attendant care provider when traveling, such as the airplane fare, lodging, and food. Petitioners provided to the Court summaries listing the travel expenses incurred on behalf of the care provider, such as food, hotel, gas and tolls, and tickets, but they did not provide supporting documentary evidence to substantiate the expenses. Because petitioners did not keep receipts of expenses, they estimated the amounts that they now claim as expenses. Mr. Emanuel explained that he was able to provide a summary of expenses because he was in the habit of contemporaneously maintaining a log of vacation expenses which he subsequently entered onto his computer. Mr. Emanuel prepared the summaries when they were first audited, which was sometime between 1999 and 2001.

We are not satisfied that there was no significant element of personal pleasure, recreation, or vacation in their trips to Walt Disney World and Universal Studios Florida.  Sec. 213(d)(2).  Moreover, petitioners have not substantiated the claimed travel expenses.  Sec. 1.213-1(h), Income Tax Regs.  We conclude that petitioners are not entitled to deduct the travel expenses for the attendant care provider as a medical expense.

e.   Backup generator

Christopher would scratch and bite himself in great distress when the radio, television, and air conditioning in the home could not operate due to a loss of power.  Power outages would occur in petitioners' home three or four times a year.  Petitioners purchased a backup electrical generator for $840 in 1998 to avoid the distress to Christopher when the radio, television, and air condition were not operating.  The generator was not used to provide electricity to medical equipment for Christopher.

The electrical generator is a capital expenditure.  Secs. 263, 213(d)(1)(A); sec. 1.213-1(e)(1)(iii), Income Tax Regs.  Petitioners' explanation for the electrical generator is that they purchased it to ease Christopher's distress, but this does not indicate a medical exigency.  See Haines v. Commissioner, 71 T.C. 644 (1979).  Although the electrical generator may have been beneficial to Christopher because it operated the radio,

television, and air conditioner during power outages, it does not have as its primary purpose medical care, that is, the cure, mitigation, or treatment of Christopher's condition. Sec. 1.213-1(e)(1)(iii), Income Tax Regs. Petitioners have not alleged, nor are there facts in the record that would suggest, that they are entitled to deductions for the radio, television, and air conditioner as medical expenses. Id.; see Gerard v. Commissioner, 37 T.C. 826 (1962). We conclude that petitioners are not entitled to deduct the cost of the backup generator as a medical expense.

### f. Pool maintenance

Petitioners claim that they are entitled to deduct as a medical expense amounts paid to maintain the quality of the swimming pool (i.e., chemicals, equipment, electricity) at their home. Petitioners installed the swimming pool in their home in 1979 after Christopher's pediatrician recommended that he swim to develop his motor skills. He uses the pool about once a day with Mrs. Emanuel's assistance. The pool depth ranges from 3 to 5-1/2 feet. It has wide steps and a grab rail in the shallow end, but it has no diving board or slide.

Mr. Emanuel's doctors also recommended that he engage in aquatic therapy in a swimming pool. Mr. Emanuel testified that he used the pool at his house three or four times a day in good

weather.  Mr. Emanuel testified that his other son almost never used the swimming pool.

Both Christopher and Mr. Emanuel used the pool daily for therapy related to their physical disabilities upon the advice of doctors.  The pool is tailored for use by both Christopher and Mr. Emanuel, it is usable throughout the year, and Christopher and Mr. Emanuel used the pool daily.  See Haines v. Commissioner, supra at 648.  Other family members do not use the swimming pool for recreation.  Upon these facts, we conclude that the swimming pool has as its primary purpose and is directly related to the medical care of both Christopher and Mr. Emanuel.  Sec. 1.213-1(e), Income Tax Regs.

Petitioners did not maintain receipts of the expenses incurred with respect to the maintenance of the pool; therefore, they produced an estimate from the swimming pool supply store, Pinch-A-Penny, from which they purchased supplies.  The estimate provided that the annual cost of maintaining a swimming pool such as the one owned by petitioners was approximately $1,200.  Moreover, Mr. Emanuel provided testimony as to the items needed to maintain the pool and their general cost.  We find the estimate from Pinch-A-Penny and Mr. Emanuel's testimony to be credible.

Although generally a taxpayer is required to keep records to establish the amount of his deductions under section 6001, in

some situations, the Court may estimate the amount of medical expenses and allow a deduction to that extent, notwithstanding substantiating documentary evidence in the record. Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930); Meyers v. Commissioner, T.C. Memo. 1996-219. The Court is satisfied that petitioners incurred $1,200 in pool maintenance expenses for each of the years at issue, and petitioners are entitled to deduct the expenses for 1996, 1997, and 1998 as medical expenses to the extent allowable under section 213(a).

g.   YMCA day camp

Christopher was enrolled in a YMCA program during the tax years at issue the cost of which petitioners allege they are entitled to deduct for each of the years at issue as dependent medical expenses. The brochure for the YMCA program reflects that it is structured to enhance physical and social growth in the areas of recreation and leisure activities for special populations.

The YMCA program was designed to assist a student like Christopher with severe physical and mental disabilities with physical growth and to treat his problems. Christopher's participation in the program was prompted by his mental and physical disabilities, and the program had principally a therapeutic value for him. See Greisdorf v. Commissioner, 54 T.C. 1684, 1690 (1970). We conclude that the YMCA program was

directly or proximately related to the mitigation or treatment of Christopher's disabilities and the principal reason for Christopher's attendance was to treat his disability. Therefore, petitioners are entitled to deduct $1,569 in 1996, $1,558 in 1997, and $1,234 in 1998 as medical expenses to the extent allowable under section 213(a).

2. Charitable contribution

Any charitable contribution which is made within the taxable year may be allowed as a deduction. Sec. 170(a)(1). Any contribution of $250 or more shall not be allowed unless the taxpayer substantiates the contribution by a contemporaneous written acknowledgment of the contribution by the donee organization. Sec. 170(f)(8)(A). The written acknowledgment must contain the following information:

> SEC. 170(f)(8)(B) Content of Acknowledgement.– * * *
>
> (i) The amount of cash and a description (but not a value) of any property other than cash contributed;
>
> (ii) Whether the donee organization provided any goods or services in consideration, in whole or in part, for any property described in clause (i);
>
> (iii) A description and good faith estimate of the value of any goods or services referred to in clause (ii) or, if such goods or services consist solely of intangible religious benefits, a statement to that effect.

Although no deduction is allowed for a contribution of services, unreimbursed out-of-pocket transportation expenses incurred, such as mileage driven, while performing donated

services are deductible. Sec. 1.170A-1(g), Income Tax Regs. The deductible standard mileage rate for computing the deduction for the use of a passenger automobile driven in connection with rendering services to a charitable organization is 12 cents per mile for years beginning on or before December 31, 1997, and 14 cents per mile for years beginning after December 31, 1997. Sec. 170(i); Churukian v. Commissioner, T.C. Memo. 1980-205; see also Rev. Proc. 95-54, 1995-2 C.B. 450; Rev. Proc. 96-63, 1996-2 C.B. 420; Rev. Proc. 97-58, 1997-2 C.B. 587.

Petitioners assert they are entitled to deduct as a charitable contribution $425 relating to use of their van for charitable purposes. Petitioners have not provided any facts indicating that the use of the van was for the benefit of a charity and not for the benefit of one of the family members. See Seed v. Commissioner, 57 T.C. 265 (1971). In addition, petitioners allege that Exhibit 16-P substantiates the mileage driven; however, this exhibit does not indicate what the donee charitable organization was or describe the charitable services provided by petitioners. We conclude that petitioners are not entitled to a charitable deduction for mileage driven.

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect the foregoing,

<u>Decisions will be entered</u>

<u>under Rule 155.</u>